## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LATASHA CUBAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-1322-WBV-KWR** |
| **ST. JAMES PARISH SCHOOL BOARD, ET AL.** | **SECTION: D (4)** |

## ORDER AND REASONS

Before the Court is a Rule 12(b)(1) and (6) Motion to Dismiss, filed by defendant, Paul McDonald.[1]  Also before the Court is a Rule 12(b)(1) and (6) Motion to Dismiss, filed by defendants, St. James Parish School Board, P. Edward Cancienne, Jr., Kelly Cook, Anne Detillier, Vondra Steib, Sabra Robichaux, Hollie Folse, and Becky Louque.[2] Latasha Cubas filed one Opposition brief in response to both motions.[3]  After careful consideration of the parties' memoranda and the applicable law, both Motions to Dismiss are **GRANTED in part** and **DENIED in part**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This is an employment discrimination case.  Latasha Cubas filed a Complaint in this Court asserting employment discrimination claims under Louisiana and federal law against St. James Parish School Board, P. Edward Cancienne, Jr., in his individual and official capacity as Superintendent of St. James Parish Schools, Kelly

---

[1] R. Doc. 14.
[2] R. Doc. 16.
[3] R. Doc. 17.

Cook, in her individual and official capacity as Administrator/Director of Student Services of St. James Parish Schools, Anne Detillier, in her individual and official capacity as Director of Teaching and Learning K-12, Vondra Steib, in her individual and official capacity as Director of Special Education, Sabra Robichaux, in her individual and official capacity as Pupil Appraisal/504 Coordinator,[4] Hollie Folse, in her individual and official capacity as principal of Paulina Elementary School, Becky Louque, in her individual and official capacity as Virtual Academy Principal and Paul McDonald, in his individual and official capacity as Special Education Consultant at St. James Parish School Board.[5]   Plaintiff asserts that she has exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on February 7, 2020, which issued a right to sue letter that same day.[6]

Plaintiff alleges that she was hired as a school psychologist by St. James Parish School Board in March 2015, and that her job duties included evaluating pupils to determine whether they qualified for special education, accommodations and gifted and talented programs.[7]   Without specifying when the illegal activity began, Plaintiff alleges that she complained of illegal activity by defendants, Detillier, Steib, Robichaux, Folse, Louque, McDonald and Cancienne to her immediate supervisors,

---

[4] It is unclear to the Court whether Detillier, Steib and Robichaux are sued in their official capacities for their roles with the St. James Parish School Board or St. James Parish Schools, as the Complaint includes claims against these three defendants in their official capacities "at SJPB," but provides no definition for the term "SJPB." (R. Doc. 1 at p. 2).   The Court notes that the Complaint only defines "SJPS" as "Saint James Parish School." *Id.* at ¶ (c).

[5] *Id.* at pp. 1-3.

[6] *Id.* at p. 3.

[7] *Id.* at p.3, ¶¶ 1-2.

Robichaux and Steib, "continuously throughout her employment."[8]   Such illegal conduct includes changing student evaluations, illegally falsifying official documents, discrimination against minorities and special education students, destruction of test protocols and student folders, failing to provide special education services and refusal to provide other needed services, failing to comply with and changing students' Individualized Education Plans, backdating official documents, and changing evaluations "to change the trajectory of children [sic] lives to fit the nonscientific evaluation of principal and make evaluation due to political connection and who parents are and not the abilities of the child."[9]   Plaintiff claims that after reporting this activity, she was labeled a "troublemaker" and a "roadblock" by coworkers and her supervisors, Robichaux, Steib, Detillier, and Folse.[10]   Plaintiff contends that she "continuously complained and continuously reported the illegal activity to her supervisors throughout her employment," with the last major incidents occurring on August 20, 2019 and October 15, 2019.[11]

Plaintiff alleges that on August 20, 2019, she was called into a meeting with Cancienne, the Parish Superintendent, and 22 other people, during which Cancienne told Plaintiff she could "get on the boat or get off the boat," and that school principals would be making decisions regarding special education.[12]   When Plaintiff challenged this directive as illegal during the meeting, Cancienne allegedly told Plaintiff to make

---

[8] *Id.* at pp. 3-4, ¶¶ 3-4.
[9] *Id.* at pp. 3-5, ¶ 3.
[10] *Id.* at p. 5, ¶ 5.
[11] *Id.* at p. 5, ¶ 6.
[12] *Id.* at pp. 5-6, ¶ 7.

her evaluations fit the determinations made by the principal and then belittled and berated Plaintiff.[13]   Plaintiff alleges that she informed Cook of the "illegal activity, the harassment by her supervisor, and the retaliation," and Cook advised that she would investigate the allegations.   Although Cook later advised Plaintiff that her complaints were valid, Cook told Plaintiff that she did not want to take any remedial actions because "it could open up a can of worms and there would be no turning back."[14]   Plaintiff alleges that the harassment, complaints about her job performance, retaliation and treatment by her supervisor got worse at that point.   According to Plaintiff, Folse "began to make false accusations regarding Plaintiff's work, spreading lies and rumors about the Plaintiff, making the job more difficult by adding unnecessary tasks to job responsibilities," and Steib and Cook told Plaintiff that they were going to get rid of her.[15]   Plaintiff asserts that she was not given assistance or support, and that she reported all of the behavior to Robichaux, Steib, and Detillier.[16]

Plaintiff alleges that another meeting was held on October 15, 2019, during which she told her supervisors that she would not change special education evaluations or break the law and that she was told to "just bend the law" and to "water herself down."[17]   During that meeting Plaintiff "informed everyone present that what was being done was illegal."[18]   Plaintiff asserts that the "harassment, verbal attacks, and criticism [sic], alienating, name calling [sic] continued," and that her supervisors

---

[13] *Id.* at p. 6, ¶ 9.
[14] *Id.* at p. 7, ¶ 11.
[15] *Id.* at ¶ 14.
[16] *Id.* at ¶¶ 14-15.
[17] *Id.* at ¶ 16.
[18] *Id.*

continued to make "horrible complaints" regarding her job performance.[19]  Plaintiff claims that, "Paul McDonald even joined in the retaliation by telling Plaintiff to stay in her lane and cursing her and berating her for standing up to illegal activity."[20] Plaintiff alleges that she began experiencing mental health issues due to the workplace conditions and submitted her letter of resignation on December 20, 2019.[21]

Plaintiff filed her Complaint on May 1, 2020, asserting claims of employment discrimination under Louisiana and federal law.  In Counts 1 through 3, Plaintiff alleges that all of the defendants violated Title VII of the Civil Rights Act. 42 U.S.C. §2000, *et seq*. through unlawful retaliation and constructive discharge, race discrimination and harassment based on Plaintiff's race and sex.[22]  Plaintiff also alleges race discrimination under La. R.S. 23:301, the Louisiana Employment Discrimination Law in Count 2.[23]  In Count , Plaintiff alleges a 42 U.S.C. § 1983 First Amendment Retaliation claim against all of the defendants.[24]  Plaintiff's additional state law claims are asserted in Counts 5 through 7, including a claim for defamation in Count 5, a claim for intentional infliction of emotional distress in Count 6, and a claim under the Louisiana Whistleblower statute, La. R.S. 23:967, in Count 7.[25] Plaintiff seeks damages in the form of back pay, front pay, non-pecuniary losses

---

[19] *Id*. at pp. 7-8, ¶ 17.
[20] *Id*.
[21] *Id*. at p. 8, ¶¶ 18-19.
[22] *Id*. at pp. 8-10.
[23] Mistakenly referenced in Plaintiff's Complaint as "Louisiana R.S. 23:01 et. al."  *Id*. at p. 9.
[24] *Id*. at p. 10.
[25] *Id*. at pp. 11-14.

including emotional distress, damages for loss of enjoyment and humiliation, past and future pecuniary losses, punitive damages, and attorneys' fees and costs.[26]

On July 15, 2020, Paul McDonald ("McDonald"), in his individual and official capacity as Special Education Consultant at St. James Parish School Board, filed the instant Motion to Dismiss, seeking to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) and (b)(6).[27]   The remaining defendants – St. James Parish School Board, Cancienne, Cook, Detillier, Steib, Robichaux, Folse and Louque (collectively, "the remaining Defendants," or individually by their last name) – filed an identical Motion to Dismiss under Rule 12(b)(1) and 12(b)(6) on the same day, asserting similar arguments to McDonald.[28]   As such, the Court will discuss the Motions to Dismiss together when appropriate and, in doing so, will refer to all of the defendants collectively as "Defendants."

Defendants seek dismissal under Rule 12(b)(1) based upon Plaintiff's alleged failure to exhaust her administrative remedies, which indicates a lack of subject matter jurisdiction.[29]   Defendants claim that Plaintiff's Right to Sue letter from the EEOC fails to include any factual allegations, although the letter references an attached summary of allegations that is not attached to the Complaint and had not been provided to any of the defendants as of the date of their Motions to Dismiss, despite their request.[30]   Defendants also point out that the Right to Sue letter was

---

[26] *Id.* at pp. 14-15.
[27] R. Doc. 14.
[28] R. Doc. 16.
[29] R. Doc. 14 at p. 1, n.1; R. Doc. 14-1 at p. 18, n.1; R. Doc. 16 at p. 1, n.1; R. Doc. 16-1 at p. 19, n.3.
[30] R. Doc. 14-1 at p. 49; R. Doc. 16-1 at p. 50.

issued the same day that the EEOC charge was filed, and that the purpose of the exhaustion doctrine "to facilitate the EEOC's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws" cannot be fulfilled under such facts.[31]  Defendants contend that, since the scope of a Title VII complaint is limited to the allegations in the EEOC charge and Defendants have not received the factual summary that was attached to Plaintiff's EEOC charge, then all of her Title VII claims should be deemed outside of the EEOC charge and dismissed.[32] Defendants contend that the checking of three boxes on the EEOC charge is insufficient to establish any baseline facts in this case.[33]

Defendants also seek dismissal of all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[34]  Defendants seek dismissal of the Title VII claims asserted against the individual defendants in Counts 1 through 3 of the Complaint on the basis that Title VII only allows claims against employers, not individuals.[35]  Similarly, Defendants assert that Counts 2 and 7 should be dismissed because neither La. R.S. 23:301, as asserted by Plaintiff in Count 2, nor the Louisiana Whistleblower statute, La. R.S. 23:967, as asserted by Plaintiff in Count 7, allows for

---

[31] R. Doc. 14-1 at p. 49 (quoting *Williams v. E.I. Dupont*, 154 F. Supp. 3d 407 (M.D. La. 2015) (internal quotation marks omitted); R. Doc. 16-1 at p. 50 (quoting *Williams,* 154 F. Supp. 3d 407).

[32] R. Doc. 14-1 at pp. 49-50; R. Doc. 16-1 at pp. 50-51.

[33] R. Doc. 14-1 at p. 50; R. Doc. 16-1 at p. 51.

[34] R. Docs. 14 & 16.

[35] R. Doc. 14-1 at p. 19 (citing *Smith v. Amedisys, Inc.,* 298 F.3d 434, 448-49 (5th Cir. 2002); *Grant v. Lone Star Co.*, 21 F.3d 649 (5th Cir. 1994); *Ackel v. National Communications*, 339 F.3d 376, 382 (5th Cir. 2003); *Hunter v. Jefferson Parish Public School Sys.*, Civ. A. No. 17-2015, 2017 WL 2910992 (E.D. La. July 7, 2017); *Umoren v. Plano Indep. School Dist.*, 457 Fed.Appx. 422 (5th Cir. 2012); *Foley v. University of Houston System*, 355 F.3d 333, 340 (5th Cir. 2003)); R. Doc. 16-1 at pp. 19-20 (citing same authority).

claims against individuals.[36]  Defendants further assert that the claims brought against them in their official capacities as employees of St. James Parish School Board in Counts 1 through 4 are redundant of the claim brought against Plaintiff's employer, St. James School Board, and should likewise be dismissed.[37]

Defendants next assert that Plaintiff's Title VII claims of discrimination, harassment, and retaliation, asserted in Counts 1 through 3, should be dismissed for failing to allege that any such actions were taken based on her membership in a protected class, such as her race or gender, or were racially motivated.[38]  Defendants further assert that Plaintiff's Title VII claims in Counts 1 through 3, her § 1983 retaliation claim in Count 4, and her claims under the Louisiana Employment Discrimination Law, La. R.S. 23:301, in Count 2 and Louisiana's Whistleblower statute, La. R.S. 23:967, in Count 7, must also be dismissed because Plaintiff has failed to allege any adverse employment action and/or constructive discharge, as required by Title VII.[39]  Citing Fifth Circuit precedent, Defendants assert that a stringent showing is required for adverse employment action and Title VII "does not set forth 'a general civility code for the American workplace.'"[40]  Defendants then go

---

[36] R. Doc. 14-1 at p. 19 (citing *Goulas v. LaGreca*, 945 F. Supp. 2d 693 (E.D. La. 2013); *Broussard v. Lafayette City-Parish Consol. Government*, 45 F. Supp. 3d 553 (W.D. La. 2014); *Mays v. Bd. of Commissioners Port of New Orleans*, Civ. A. No. 14-1014, 2015 WL 1245683 (E.D. La. Mar. 18, 2015)); R. Doc. 16-1 at p. 20 (citing same authority).

[37] R. Doc. 14-1 at pp. 19-20 (citing authority); R. Doc. 16-1 at pp. 20-21 (citing same authority).

[38] R. Doc. 14-1 at pp. 20-22; R. Doc. 16-1 at pp. 21-22.

[39] R. Doc. 14-1 at pp. 22-25; R. Doc. 16-1 at pp. 22-26.

[40] *Id.*, quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68, 126 S.Ct. 2405 and *Pegram v. Honeywell, Inc.*, 361 F.2d 272, 282 (5th Cir. 2004).

into great detail as to why each cause of action in the Complaint fails to state a plausible claim against them.[41]

Additionally, Defendants contend that Plaintiff has failed to comply with the notice pleading requirement of the Federal Rules of Civil Procedure by lumping her allegations against the defendants together in a group, rather than asserting specific allegations against each individual defendant.[42]   Relying on a case from another Section of this court, Defendants argue that the Court should ignore allegations made against the "defendants" or "supervisors" as a group, and view only those allegations specific to individual defendants.[43]   Defendants further assert that if all of Plaintiff's federal claims are dismissed, the Court should not exercise supplemental jurisdiction over any remaining state law claims under 28 U.S.C. § 1367.[44]   Defendants argue that Plaintiff is not entitled to punitive damages because punitive damages aren't allowed against municipal bodies, like St. James School  Board, under Title VII or § 1983, and because there are no viable claims against the individual defendants.[45] Finally, Defendants seek an award of attorney's fees under 42 U.S.C. § 1988 on the basis that Plaintiff's Title VII or § 1983 claims are frivolous.[46]

---

[41] R. Doc. 14-1 at pp. 25-48; R. Doc. 16-1 at pp. 26-49.

[42] R. Doc. 14-1 at pp. 48-49; R. Doc. 16-1 at pp. 49-50.

[43] R. Doc. 14-1 at pp. 48-49 (quoting *Cain v. City of New Orleans*, Civ. A. No. 15-4479, 2016 WL 2849498 (E.D. La. May 13, 2016)) (internal quotation marks omitted); R. Doc. 16-1 at pp. 49-50 (quoting *Cain*, Civ. A. No. 15-4479, 2016 WL 284949) (internal quotation marks omitted).  Defendants also attempt to argue that any Title VII claims based upon acts that occurred before May 8, 2019 are time-barred, but Defendants fail to explain how they reached the date calculated in their Motions.  (*See*, R. Doc. 14-1 at p. 50-51; R. Doc. 16-1 at p. 51).  Defendants also assert that any § 1983 claim or state law claim based upon acts that occurred before May 1, 2019 are also time-barred.  (R. Doc. 14-1 at p. 51; R. Doc. 16-1 at p. 52).

[44] R. Doc. 14-1 at p. 51; R. Doc. 16-1 at p. 52.

[45] R. Doc. 14-1 at pp. 51-52; R. Doc. 16-1 at pp. 52-53.

[46] R. Doc. 14-1 at p.52; R. Doc. 16-1 at p. 53.

Plaintiff filed one Opposition brief in response to both Motions, arguing that her Complaint satisfies the federal pleading requirement of Fed. R. Civ. P. 8 by offering a short, concise statement of her claims.[47]  Plaintiff asserts that she is "not required to nor should they [sic] allege each and every fact and each and every allegation."[48]  While Plaintiff discusses the requirements of a Rule 12(b)(6) motion to dismiss, generally, she only fleetingly responds to the specific arguments made by Defendants in their Motions to Dismiss.   Instead of addressing Defendants' arguments, Plaintiff asserts that Defendants' Motions ask the Court to draw legal conclusions, which is not permitted in a Rule 12(b)(6) analysis.[49]  Plaintiff further points out that, "90% of the case [sic] cited by Defendant's [sic] are Motion for Summary Judgment cases.   In those cases, the Court is allowed to draw legal conclusions and that is exactly what the Defendants are asking this court to do in this 12(b)(6) Motion.   The Defendants essentially filed a Motion for Summary Judgment."[50]  Interestingly, Plaintiff concedes that, "A [Rule] 12(b)(6) Motion is designed to dismiss claims that can not [sic] meet the statutory requirements at all such as a claim against an individual under Title VII."[51]  Plaintiff does not address the fact that she has filed Title VII claims against several individuals other than her employer.  Plaintiff also contends that Defendants' assertions that she had no adverse employment action and was not constructively discharged are not supported by the

---

[47] R. Doc. 17 at p. 2.
[48] *Id.*
[49] *Id.* at pp. 1-3.
[50] *Id.* at p. 2.
[51] *Id.* at p. 3.

facts in the Complaint, nor are Defendants' statement that there was no racial animus.[52]  The Court notes that Plaintiff's Opposition brief is replete with rhetorical questions, such as, "Would any attorney in this case not quit a job if it risked them being permanently disbarred?  Like not being able to practice law at all.  Something they spent 7 years of their life working to get.  Would they not consider that constructive discharge especially if there was constant pressure over a 4 year period?"[53]  Regarding racial animus, Plaintiff asserts that::

> One, there are several racial comments that were made to Plaintiff , [sic] but one of the most derogatory is when Dr. Cancienne states that it was New Day [sic] in St. James and Plaintiff needed to decide if she was going to get on the boat or off the boat because the "General" had spoken and basically not to worry about the children if their own parents are not. [sic] What boat is he referring to?  A slave boat?  Why the General reference?  Is it a slavery General?[54]

Plaintiff asserts that Defendants' Motions should be denied because, "if not it will have this court go through every section of the complaint and make legal conclusions which Plaintiff would then amend to fix which would be pointless."[55]  Plaintiff concludes by asserting that the Motions to Dismiss should be denied, but if they are granted, "Plaintiff should be allowed to amend [sic] complaint consistent with courts [sic] ruling."[56]

---

[52] *Id*. at pp. 3-4.
[53] *Id*. at p. 3.
[54] *Id*.
[55] *Id*. at p. 5 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).
[56] R. Doc. 17 at p. 5.

## II.   LEGAL STANDARD

### A. Fed. Rule of Civil Procedure 12(b)(1) Standard

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case.[57]  A case is properly dismissed pursuant to Rule 12(b)(1) "for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[58]   In considering a challenge to subject matter jurisdiction under Rule 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"[59] Thus, a motion to dismiss for lack of jurisdiction may be decided by the Court based on: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own resolution of disputed facts.[60]   The party asserting jurisdiction carries the burden of proof when facing a Rule 12(b)(1) motion to dismiss.[61]   A motion to dismiss under 12(b)(1) should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[62]

---

[57] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).

[58] *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[59] *Krim*, 402 F.3d at 494 (quoting *Home Builders Ass'n of Miss., Inc*., 143 F.3d at 1010).

[60] *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)) (internal quotation marks omitted).

[61] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161).

[62] *Ramming,* 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010).

### B. Fed. Rule of Civil Procedure 12(b)(6) Standard

It is well-settled in this Circuit that motions to dismiss under Fed. R. Civ. P. 12(b)(6) are viewed with disfavor and are rarely granted.[63] To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[64] A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[65] But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[66] In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[67] However, the allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.[68] "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[69] In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[70] The

---

[63] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).
[64] *Romero v. City of Grapevine, Tex.*, 888 F. 3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).
[65] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).
[66] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F. 3d 1029, 1032 (5th Cir. 2010) (per curiam).
[67] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[68] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).
[69] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).
[70] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[71]

## III.   ANALYSIS

### A. Defendants' Motions to Dismiss Pursuant to Rule 12(b)(1)

As a threshold matter, the Court addresses its subject matter jurisdiction in this case. Plaintiff has asserted claims under Title VII of the Civil Rights Act and 42 U.S.C. § 2000, *et seq.*, 42 U.S.C. § 1983, as well as various state law claims.[72] Since Plaintiff's claims arise under federal law, the Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343, and may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

In their Motions to Dismiss under Rule 12(b)(1), Defendants contend that Plaintiff's claims should be dismissed for failure to exhaust her administrative remedies. Specifically, Defendants assert that Plaintiff filed her charge with the EEOC on February 7, 2020 and the EEOC issued its right to Sue letter the same day.[73] Since Plaintiff attached the EEOC Charge of Discrimination and Right to Sue letter to her Complaint, the Court may consider them for purposes of the Motions to Dismiss. While it appears correct that Plaintiff filed her Charge of Discrimination with the EEOC and was issued a Right to Sue letter the same day, it does not naturally follow either that Plaintiff failed to exhaust her administrative remedies

---

[71] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

[72] Specifically, Plaintiff has asserted state law claims of defamation, intentional infliction of emotional distress, and the violation of Louisiana's Whistleblower statute, La. R.S. 23:967.

[73] R. Doc. 14-1 at p. 49; R. Doc. 16-1 at p. 50.

or, secondly, that the Court lacks subject matter jurisdiction as a result. The Supreme Court and the Fifth Circuit Court of Appeals have addressed this very issue and have determined that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but rather a condition precedent, which on proper occasion may be equitably modified.[74] Defendants do not contest that Plaintiff timely filed her claim with the EEOC.

The only other issue raised by Defendants is whether Plaintiff's failure to provide Defendants with a full copy of her factual summary is fatal at this stage. Defendants correctly assert that the scope of a Title VII complaint is limited to the allegation of the EEOC charge. In deciding whether Plaintiff has provided a sufficient factual basis to allow for a Title VII claim, the Court is guided by the Fifth Circuit's directive that, "Mindful of the remedial and humanitarian underpinning of Title VII and of the crucial role played by the private litigant in the statutory scheme, courts construing Title VII have been extremely reluctant to allow procedural technicalities to bar claims under the Act."[75] The Fifth Circuit has made clear that it does not require a Title VII plaintiff to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency. Nor do we require, for purposes of exhaustion that a plaintiff allege a prima fac[i]e case before the EEOC."[76] "Instead, the plaintiff's administrative charge will be read

---

[74] *Fort Bend County, Texas v. Davis*, 139 S.Ct 1843, 204 L.Ed.2d 116 (2019); *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (citing *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011)).
[75] *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).
[76] *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006) (citing *Sanchez*, 431 F.2d at 463).

somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger."[77]

In Plaintiff's Charge of Discrimination filed with the EEOC, Plaintiff clearly identifies herself as the complainant and identifies the St. James Parish School System as the agency who is alleged to have discriminated against her.[78]  Plaintiff checked four boxes indicating the alleged discrimination was based on race, color, sex and retaliation, and also checked a box indicating that it was a continuing action. The Charge is silent as the particular facts.  Instead, the Charge states, "See attached sheet for summary."[79]  The Right to Sue letter, which is also dated February 7, 2020, is signed by the EEOC Director, Keith T. Hill, and copied to St. James Parish School System.[80]  Plaintiff filed suit on May 1, 2020, within the 90-day window to timely file suit after the issuance of the Right to Sue letter.  Further, in the Complaint itself, Plaintiff asserts that she followed St. James Parish School Board's reporting policy by complaining to the principal, then to supervisors, then to the Superintendent and then to Cook of harassment and retaliation, prior to her resignation.[81]  In light of these facts, that Plaintiff's employer was aware of the basis of Plaintiff's claims, both from Plaintiff herself and from the EEOC when it sent a copy of the Charge of Discrimination to St. James Parish School Board, and that Plaintiff did not file suit until several months later, the Court makes the narrow finding that Plaintiff

---

[77] *Pacheco*, 448 F.3d at 792.
[78] R. Doc. 1-2 at p. 1.
[79] *Id.*
[80] *Id.* at p. 2.
[81] *See*, R. Doc. 1 at pp. 6-7, ¶¶ 10, 15, p. 14 at ¶ 7.

exhausted her administrative remedies in this case.[82]  Therefore, to the extent that Defendants seek dismissal under Rule 12(b)(1) based on Plaintiff's failure to exhaust administrative remedies, the Motions are denied without prejudice.

**B. Motions to Dismiss Pursuant to Rule 12(b)(6)**

Because there are two Motions to Dismiss before the Court, filed by the individual defendants in this case and the St. James Parish School Board, the Court finds it appropriate to discuss the sufficiency of Plaintiff's allegations with respect to the individual defendants before turning to the sufficiency of the allegations against the St. James Parish School Board.

### 1. *Claims Against "Defendants" and "Supervisors," in globo.*

In the Motions to Dismiss, Defendants assert that the Court should ignore any allegations in the complaint made against the "defendants" or "supervisors," *in globo*, because group pleading fails to satisfy the notice pleading requirement of the Federal Rules of Civil Procedure.[83]  Under the ordinary rules of notice pleading, set forth in Fed. R. Civ. P. 8(a)(2), a complaint need only include a "short and plain statement of the claim showing that the pleader is entitled to relief," which statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[84]  The Fifth Circuit recently provided clarification regarding the impact of group pleading, explaining that, "creating a category of multiple defendants

---

[82] Defendants' claims that they have not received Plaintiff's Factual Summary, which was submitted with Plaintiff's Charge of Discrimination, as of the date of filing their Motions to Dismiss are more appropriately addressed as discovery matters.

[83] R. Doc. 14-1 at pp. 48-49; R. Doc. 16-1 at pp. 49-50.

[84] *Parker v. State of La. Dept. of Educ. Special School Dist.*, Civ. A. No. 07-369-C, 2007 WL 2751213, at *2 (M.D. La. Sept. 18, 2007) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)) (internal quotation marks omitted).

into a clearly defined term does not, of itself, warrant dismissal.  But while referring to a collective group of defendants is not a fatal pleading deficiency, '[e]ach defendant is [still] entitled to know what he or she did that is asserted to be wrongful.'"[85]  The Fifth Circuit further instructed that, "Because the notice pleading requirement of the Federal Rules of Civil Procedure entitle each defendant to know what he or she did that is asserted to be wrongful, allegations based on a 'theory of collective responsibility' cannot withstand a motion to dismiss."[86]  While the Court finds Plaintiffs' allegations against "Defendants," *in globo*, are not sufficient under Fed. R. Civ. P. 8(a)(2), because Rule 12(b)(6) motions to dismiss are viewed with disfavor in this Circuit and are rarely granted,[87] the Court will not dismiss Plaintiff's allegations or claims on the basis of her use of group pleading.  Instead, the Court will  analyze the specific claims made by Plaintiff as to each defendant to determine whether dismissal is warranted.

### 2.  *Plaintiff's Individual and Official Capacity Claims Against Paul McDonald, P. Edward Cancienne, Jr., Kelly Cook, Anne Detillier, Vondra Steib, Sabra Robichaux, Hollie Folse, and Becky Louque.*

### a.  <u>Counts 1 Through 3 Are Dismissed With Prejudice.</u>

In Counts 1 through 3 of the Complaint, Plaintiff asserts Title VII claims against "Defendants," *in globo*.[88]  Title VII of the Civil Rights Act, as amended,

---

[85] *Martinez v. City of North Richland Hills,* 2021 WL 742662, at *4 (5th Cir. 2021) (quoting *Heartland Consumer Products LLC v. DineEquity, Inc.*, Civ. A. No. 1:17-CV-01035-SEB-TAB, 2018 WL 465784, at *4 (S.D. Ind. Jan. 18, 2018)).

[86] *Martinez*, 2021 WL 742662, at *4 (quoting *Bank of Am., N.A. v.* Knight, 725 F.33d 815, 818 (7th Cir. 2013)).

[87] *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (quoting *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).

[88] R. Doc. 1 at pp. 8-10.

prohibits an employer from discriminating against an individual on the basis of race, color, sex, national origin, or religion with respect to hiring, discharge, compensation, promotion, classification, training, apprenticeship, referral for employment, or other terms, conditions, and privileges of employment.[89]  The Fifth Circuit has expressly held that Title VII allows for claims against employers, but that there is no individual liability for employees under Title VII.[90]  "Thus, an employee or supervisor faces liability solely in his official capacity."[91]  Curiously, Plaintiff acknowledges in her Opposition brief that claims against individuals under Title VII cannot meet the statutory requirements.[92] Accordingly, the Title VII claims in Counts 1 through 3 of the Complaint asserted against the individual defendants in their individual capacities must be dismissed.

Plaintiff's Title VII claims against the individual defendants in their official capacities must likewise be dismissed.  The Fifth Circuit has made clear that, "a plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity."[93]  As further explained by this Court, "Because an official-capacity suit against a supervisor or other individual is actually a suit against the employing corporation, a plaintiff may not maintain a Title VII action against

---

[89] 42 U.S.C. § 2000(e), *et seq*.

[90] *Smith v. Amedisys Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002) (citations omitted); *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 382 n.1 (5th Cir. 2003) (citing *Smith*, 298 F.3d at 448-49); *Lefort v. Lafourche Parish Fire Protection Dist. No. 3*, 39 F. Supp. 3d 820, 824 (E.D. La. 2014) (citations omitted).

[91] *Lefort*, 39 F. Supp. 3d at 824.

[92] R. Doc. 17 at p. 3.

[93] *Smith*, 298 F.3d at 449 (citation omitted).

both an employer and its agent in an official capacity."[94]  Here, Plaintiff has made no allegation that any of the individual defendants were her employer or her employer's agent.  Indeed, Plaintiff named her employer, St. James Parish School Board, as a defendant in the suit.[95]  As such, Plaintiff cannot also maintain an action against the individual defendants in their official capacities.  The Court therefore dismisses Plaintiff's Title VII claims asserted against the individual defendants in their official capacities in Counts 1 through 3 of the Complaint.

As no amendment can cure these deficiencies, Plaintiff will not be granted leave to amend her Complaint as to the Title VII claims asserted against McDonald, Cancienne, Cook, Detillier, Steib, Robichaux, False or Louque in their individual and official capacities in Counts 1 through 3 of the Complaint.[96]

### b. **Plaintiff's Claims under La. R.S. 23:301, in Count 2, and under the Louisiana Whistleblower statute, La. R.S. 23:967, in Count 7, Are Dismissed With Prejudice.**

In Counts 2 and 7 of the Complaint, Plaintiff alleges that "Defendants" discriminated against her because of her race in violation of La. R.S. 23:301 and retaliated against her for refusing to violate Louisiana Bulletin 1508 regarding special education policies and procedures in violation of La. R.S. 23:967.[97]  To the extent these claims are alleged against the individual defendants in their individual

---

[94] *Lefort*, 39 F. Supp. 3d at 824 (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Smith*, 298 F.3d at 449).

[95] R. Doc. 1 at pp. 1-2, 3.

[96] Because the Court finds that Plaintiff cannot assert a plausible claim under Title VII against the individual defendants in their individual or official capacities, the Court need not address these defendants' additional arguments regarding why the Title VII claims asserted in Counts 1 through 3 of the Complaint must be dismissed as to them.

[97] R. Doc. 1 at pp. 9, 12.

and official capacities, the Court finds that the claims must be dismissed because

Plaintiff has not alleged that any of the individual defendants were her employer.[98]

The Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.*, specifically

defines "employer," in pertinent part, as:

> a person, association, legal or commercial entity, the state, or any state
> agency, board, commission, or political subdivision of the state receiving
> services from an employee and, in return, giving compensation of any
> kind to an employee.  The provisions of this Chapter shall apply only to
> an employer who employs twenty or more employees within this state
> for each working day in each of twenty or more calendar weeks in the
> current or preceding calendar year.[99]

Louisiana's Whistleblower statute, La. R.S. 23:967, similarly provides that:

> *An employer* shall not take reprisal against an employee who in good
> faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is
> in violation of state law.
> (2) Provides information to or testifies before any public body conducting
> an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice
> that is in violation of law.[100]

Further, "For an employee to establish a claim under La. R.S. 23:967, she must prove

that her employer committed an actual violation of state law."[101]   Again, Plaintiff

makes no claim that McDonald, Cancienne, Cook, Detillier, Steib, Robichaux, Folse

or Louque were her employer.  Instead, Plaintiff has clearly identified her employer

as St. James Parish School Board and has named her employer as a defendant in this

---

[98] *See, Mays v. Board of Commissioners Port of New Orleans*, Civ. A. No. 14-1014, 2015 WL 1245683, at *6 (E.D. La. Mar. 18, 2015); *Broussard v. Lafayette City-Parish Consol. Government*, 45 F. Supp. 3d 553, 581 (W.D. La. 2014); *Goulas v. LaGreca*, 945 F. Supp.2d 693, 702-03 (E.D. La. 2013).
[99] La. R.S. 23:302(2).
[100] La. R.S. 23:967 (emphasis added).
[101] *Broussard*, 45 F. Supp. 3d at 581 (quoting *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 558 (M.D. La. 2008), *aff'd*, 324 Fed.Appx. 422 (5th Cir. 2009); *Goulas*, 945 F. Supp. 2d at 702).

matter.[102]  Thus, Plaintiff's claims against the individual defendants in their official and individual capacities based upon alleged  violations of La. R.S. 23:301 and La. R.S. 23:967, as set forth in Counts 2 and 7 of the Complaint, must be dismissed.

As no amendment can cure these deficiencies, Plaintiff will not be granted leave to amend her Complaint as to Counts 2 and 7 with respect to the individual defendants.[103]

### c. **Plaintiff's 42 U.S.C. § 1983 Claims Asserted in Count 4 Are Dismissed Without Prejudice.**

In Count 4 of the Complaint, Plaintiff alleges that "Defendants" violated 42 U.S.C. § 1983  by retaliating against her for engaging in "protected activity," which retaliation included being constructively discharged.[104]  To state a viable § 1983 claim, the complaint must: (1) allege the violation of a constitutional right; and (2) allege that the violation was committed by a person acting under color of state law.[105]  Although not a model of clarity, Plaintiff appears to allege a violation of her First Amendment right by asserting that she "engaged in protected activity when she reported the illegal activity."[106]

According to the Fifth Circuit, to establish a *prima facie* case for First Amendment retaliation, a public employee must show that:

(1) He suffered an adverse employment action;

---

[102] R. Doc. 1 at pp. 1-2, 3.

[103] Because the Court finds that Plaintiff cannot assert a plausible claim under La. R.S. 23:301 or La. R.S. 23:967 against the individual defendants in their individual or official capacities, the Court need not address these defendants' additional arguments regarding why Counts 2 and 7 must be dismissed as to them.

[104] R. Doc. 1 at p. 10.

[105] *Rowley v. Tchefuncta Club Estates, Inc.*, 151 Fed.Appx. 349, 350 (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005)) (internal quotation marks omitted).

[106] R. Doc. 1 at p. 10.

(2) He spoke as a citizen, rather than pursuant to his official job duties;
(3) He spoke on a matter of public concern;
(4) His interest in the speech outweighed the government's interest in the efficient provision of public services; and
(5) His speech precipitated the adverse employment action.[107]

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement."[108]  Addressing the second factor set forth above, the Supreme Court has held that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.[109]  The Fifth Circuit has further clarified that, "Under *Garcetti,* we must shift our focus from the content of the speech to the role the speaker occupied when he said it."[110]  Complaints made by public employees "up the chain of command" at their workplace about job duties normally fall outside of First Amendment protection.[111]

Such are the facts in this case.  Plaintiff alleges that she was employed as a school psychologist by St. James Parish School Board in 2015.[112]  Plaintiff also alleges that she "continuously" reported the alleged illegal activity to her immediate supervisors, Robichaux and Steib, through her employment.[113]  Plaintiff alleges that she, "followed the Saint James Parish School Board's reporting policy when she first

---

[107] *Hardesty v. Cochran,* 621 Fed.Appx. 771, 775-76 (5th Cir. 2015) (citations omitted).
[108] *Goudeau v. East Baton Rouge Parish School Bd*., 540 Fed.Appx. 429, 434 (5th Cir. 2013) (quoting *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008)) (internal quotation marks omitted).
[109] *Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006).
[110] *Williams v. Dallas Independent School Dist.,* 480 F.3d 689, 692 (5th Cir. 2007).
[111] *Davis v. McKinney*, 518 F.3d 304, 313 & n.3 (5th Cir. 2008) (citing authority).
[112] R. Doc. 1 at p. 3.
[113] R. Doc. 1 at p. 5.

complained to the principal, then complained to supervisors, then complained to [sic] superintendent and then complained to Ms. Cook and no remedial action was taken."[114]  Plaintiff asserts that she sent her resignation email directly to St. James Parish School Board and that no one followed up with her even after she returned to drop off equipment on January 3, 2020 and had a meeting with Detillier, Cook, Steib and Carl Webre.[115]  Based on the foregoing legal authority, Plaintiff's internal complaints up the chain of command at her workplace, as alleged in the Complaint, fall outside the scope of First Amendment protection.  Thus, even accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Plaintiff, as the Court is required to do, the Court finds that Plaintiff has failed to assert a plausible 42 U.S.C. § 1983 First Amendment Retaliation claim against the individual defendants.

The Court further notes that Plaintiff has failed to allege anything other than a conclusory statement that McDonald retaliated against her.[116]  While a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief,"[117] such a showing requires more than labels and conclusions.[118] The Court rejects Plaintiff's assertion that her allegation of retaliation by McDonald constitutes a legal conclusion.

---

[114] *Id*. at p. 14.
[115] *Id*.
[116] R. Doc. 1 at p. 8.
[117] Fed. R. Civ. P. 8(a)(2).
[118] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007).

d. **Plaintiff's Defamation Claims in Count 5 Are Dismissed Without Prejudice.**

According to the Louisiana Supreme Court, "Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name."[119] "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[120] Additionally, "The fault requirement is often set forth in the jurisprudence as malice, actual or implied."[121] "Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages."[122]

In Count 5 of the Complaint, Plaintiff alleges that "Defendants" (including all of the individual defendants) made defamatory statements concerning her job performance and her reputation pursuant to a conspiracy.[123] Plaintiff alleges that, "Defendants publicized these unprivileged comments to Plaintiff's coworkers and supervisors," and that, "Defendants were at very [sic] least negligent in publication if not intentional."[124] Plaintiff makes only two specific allegations of defamation against the individual defendants. Plaintiff alleges that Folse "began to make false

---

[119] *Costello v. Hardy*, 2003-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139 (citations omitted).
[120] *Costello*, 2003-1146 at p.12, 864 So.2d at 139 (quoting *Trentecosta v. Beck,* 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559) (internal quotation marks omitted).
[121] *Costello,* 2003-1146 at p.12, 864 So.2d at 139 (citations omitted).
[122] *Id.* (quoting *Trentecosta,* 96-2388 at p. 10, 703 So.2d at 559) (internal quotation marks omitted)
[123] R. Doc. 1 at p. 11.
[124] *Id.*

accusations about Plaintiff's job performance, questioning Plaintiff's work, spreading lies and rumors about the Plaintiff, and making the job more difficult by adding unnecessary tasks to job responsibilities."[125]  Plaintiff further alleges that during the August 20, 2019 meeting, Cancienne "informed the Plaintiff that she could 'get on the boat or get off the boat' and that the principals would be making decisions regarding special education."[126]  The Complaint is silent as to any specific allegation of defamation by the other individual defendants.

While a Complaint need not contain detailed factual allegations, it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[127]  That is, under Fed. R. Civ. P. 8, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[128]  Plaintiff's threadbare Complaint, alleging that "Defendants" made false and defamatory statements regarding Plaintiff's work and communicated such statements to Plaintiff's co-workers, as well as the statements made by Folse and Cancienne, without anything more, fail this test.  Plaintiff's allegations that Folse made "false accusations" and "spread lies and rumors" about Plaintiff are conclusory and insufficient to state a plausible claim for defamation against Folse.  The Complaint is silent as to who the "false accusations" were spread to, as well as the content of the "false accusations."  The Court further finds that Plaintiff has not alleged that the

---

[125] *Id.* at p. 7.
[126] *Id.* at pp. 5-6.
[127] *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[128] *Ashcroft,* 556 U.S. at 667-78, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

comment made by Cancienne during the August 20, 2019 meeting was false or defamatory in some way, nor has Plaintiff alleged that the comment was publicized outside of the internal work meeting.  Further, there is nothing in the Complaint identifying the publication of any false accusations to third parties.  As such, Plaintiff's defamation claim asserted against the individual defendants in Count 5 of the Complaint must be dismissed.

    e.  **Plaintiff's Claims for Intentional Infliction of Emotional Distress, asserted in Count 6, Are Dismissed Without Prejudice.**

In Count 6 of the Complaint, Plaintiff assets a claim for intentional infliction of emotional distress against "Defendants" under Louisiana Civil Code art. 2315.[129] A Louisiana claim for intentional infliction of emotional distress is actionable only if the plaintiff can show: (1) that the defendant's conduct was extreme and outrageous; (2) that the plaintiff's emotional distress was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.[130]  According to the Louisiana Supreme Court, "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[131]  The Louisiana Supreme Court has further explained that:

> Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  Persons must necessarily be expected to be hardened to a certain amount of rough

---

[129] R. Doc. 1 at pp. 11-12.
[130] *McCoy v. City of Shreveport,* 492 F.3d 551, 563 (5th Cir. 2007) (quoting *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).
[131] *White*, 585 So.2d at 1209.

language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."[132]

Here, Plaintiff alleges, generally, that "Defendants' conduct was extreme and outrageous and include [sic] a 4-year span of name-calling, beratement in front of individuals, poor job performance, threats, intimidation tactics, and eventually constructive discharge."[133] Plaintiff further alleges that her emotional distress was severe and required her to be placed on medication and see a mental health profession, and that, "Defendants desired to inflict severe emotional distress or substantially certain [sic] to result from conduct."[134] The Court finds these allegations conclusory and insufficient to withstand a Rule 12(b)(6) motion. The Court, however, will separately address the specific allegations made against each of the individual defendants.

i.    McDonald and Cancienne

As to McDonald, Plaintiff asserts elsewhere in her Complaint that, "Paul McDonald even joined in the retaliation by telling Plaintiff to stay in her lane and cursing her and berating her for standing up to illegal activity."[135] Plaintiff similarly alleges elsewhere in her Complaint that during the August 20, 2019 work meeting, at which "22 other people were present," Cancienne "informed the Plaintiff that she could 'get on the boat or get off the boat' and that the principals would be making

---

[132] *Id.* (citations omitted).
[133] R. Doc. 1 at p. 12.
[134] *Id.*
[135] *Id.* at p. 8.

decisions regarding special education."[136]  Plaintiff alleges that when she "spoke up" and challenged Cancienne's directive during the meeting, he began to "belittle, scream, and berate the Plaintiff in front of everyone."[137]   Plaintiff's allegations, without more, fail to satisfy the "extreme and outrageous" conduct required to assert a plausible claim for intentional infliction of emotional distress against McDonald or Cancienne.   Moreover, nowhere in the Complaint does Plaintiff allege any facts suggesting that McDonald or Cancienne intended to inflict severe emotional distress upon her or that they could have foreseen that such distress would result, as required to state a viable claim.   Thus, even accepting all of Plaintiff's claims as true, as this Court is bound to do at this stage, Plaintiff has failed to assert a plausible claim in Count 6 against McDonald and Cancienne, in either their official or individual capacities, for the intentional infliction of emotional distress.

       ii.    <u>Cook</u>

Plaintiff alleges that she advised Cook of the alleged illegal activity and that Cook "told her that she would investigate it and get back to her," and "met with Plaintiff several times."[138]   Plaintiff asserts that Cook followed-up with her and informed Plaintiff that she had "verified Plaintiff's complaints and that it appeared to be all valid but did not want to take any remedial actions because it could open up a can of worms and there would be no turning back," and that Cook informed her that Plaintiff "just needed to just deal with it."[139]   Plaintiff then alleges that Cook and

---

[136] *Id*. at pp. 5-6.
[137] *Id*. at p. 6.
[138] *Id*. at pp. 6-7.
[139] *Id*. at p. 7.

Steib told her that they were going to get rid of her.[140]  The Court finds that Plaintiff's allegations, without more, fail to satisfy the "extreme and outrageous" conduct requirement to state a valid claim for intentional infliction of emotional distress. Plaintiff also fails to allege any facts indicating that Cook intended to inflict severe emotional distress upon her or that she could have foreseen that such distress would result.  Thus, accepting all of Plaintiff's claims as true, Plaintiff has failed to assert a plausible claim against Cook, in either in her official or  individual capacity, for the intentional infliction of emotional distress.

### iii.   Detillier, Steib, Robichaux and Folse

In the Complaint, Plaintiff alleges that she complained about illegal activity to Robichaux and Steib continuously throughout her employment and that Steib reported the information to Detillier, but that nothing was done.[141]  Plaintiff claims that she was labeled a troublemaker and a roadblock for reporting the illegal activity, and that she was called this term to her face "by coworkers and Ms. Robichaux, Ms. Steib and Ms. Detillier, and Ms. Folse [sic]."[142]  Plaintiff further alleges that when she refused to engage in the illegal activity, "Plaintiff was informed by Anne Detillier that St. James Parish School Board would be changing the Special Education Policies and Procedures and the Plaintiff would then be required to follow the policies imposed by the School Board, as the district policy would then override the state policy."[143] Plaintiff asserts that Folse began to make false accusations about Plaintiff's job

---

[140] Id.
[141] R. Doc. 1 at p. 5.
[142] Id.
[143] Id. at p. 13.

performance, questioning Plaintiff's work, spreading lies and rumors about Plaintiff, and making the job more difficult, and that Plaintiff was told by Steib and Cook that they were going to "get rid of her."[144]

The Court finds that these allegations fail to allege "extreme and outrageous conduct" or that Detillier, Robichaux, Steib or Folse intended to inflict severe emotional distress or could have foreseen that such distress would result, as required to state a viable claim for intentional infliction of emotional distress.  Instead, the Court finds that the allegations are more akin to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,"[145] which do not arise to "extreme and outrageous" conduct.  As such, Plaintiff has failed to assert a plausible claim for intentional infliction of emotional distress against Detillier, Robichaux, Steib or Folse, in either their official or  individual capacities, and that the claims must be dismissed.

iv.  Louque

The only allegations pertaining to Louque in the Complaint include Plaintiff's assertion that she began complaining about illegal activity by all of the defendants, including Louque, and that all of the defendants, including Louque, made defamatory statements pursuant to a conspiracy.[146] Louque is not mentioned by name anywhere else in the Complaint.[147]  These allegations, without more, fail to assert a plausible claim for intentional infliction of emotional distress against Louque.  First, these

---

[144] *Id.* at p. 7.
[145] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).
[146] R. Doc. 1 at pp. 3, 11.
[147] *See, generally*, R. Doc. 1.

allegations do not allege "extreme and outrageous" conduct, as Plaintiff fails to allege anything even rising to the level of petty annoyance regarding Louque. Additionally, Plaintiff fails to allege any facts suggesting that Louque intended to inflict severe emotional distress upon her or that Louque could have foreseen that such distress would result, as required to state a plausible claim for intentional infliction of emotional distress. Even accepting all of Plaintiff's claims as true, as this Court is bound to do at this stage, Plaintiff has failed to assert a plausible claim against Louque, in either her official or individual capacity, for intentional infliction of emotional distress.

Based on the foregoing analysis, the Court finds that Plaintiff's claims for intentional infliction of emotional distress, asserted in Count 6 of the Complaint, must be dismissed as to all of the individual defendants.

### 3. *Plaintiff's Claims Against St. James Parish School Board*

#### a. <u>Count 1: Retaliation Under Title VII.</u>

Title VII makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII.[148] To establish a prima facie case of unlawful retaliation under Title VII, Plaintiff must show: (1) that she engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action.[149] As to the first factor, "protected

---

[148] *Williams v. Recovery School District*, 859 F. Supp. 2d 824, 830 (E.D. La. 2012) (*citing* 42 U.S.C. § 2000e-3(a)).

[149] *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).

activity" includes making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII.[150] "Adverse employment action" is defined as action that "a reasonable employee would have found . . . [to be] materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[151]   The Supreme Court has explained that the materiality requirement reflects the importance of separating significant from trivial harms.[152]

Plaintiff has not alleged any facts specific to St. James Parish School Board with respect to her Title VII retaliation claim in Count 1 of the Complaint.  Although Plaintiff does not have to submit evidence to establish a prima facie case of retaliation at the pleading stage, she must plead facts as to all of the elements of her claim sufficient to render the claim plausible.[153]   Plaintiff alleges that she engaged in "protected activity" by reporting the illegal activity of the defendants.[154]   Plaintiff then alleges that "Defendants," presumably including St. James Parish School Board, "harassed, verbally assaulted her, complained about her job performance, had her colleagues and coworkers ostracize her, made false accusations against her, spread

---

[150] *Williams*, 859 F. Supp. 2d at 830-31 (quoting *Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted).

[151] *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) (internal quotation marks omitted).

[152] *Aryain*, 534 F.3d at 484 (quoting *White*, 548 U.S. at 68, 126 S.Ct. 2405) (internal quotation marks omitted).

[153] *Jones v. City of Monroe*, Civ. A. No. 3:19-CV-00832, 2019 WL 5488603, at *11 (W.D. La. Oct. 8, 2019) (citing *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)).

[154] R. Doc. 1 at p. 8.

rumors about her and eventually constructively discharged her which amounts to a materially adverse action taken by the Defendants."[155]

The Court finds that Plaintiff has failed to allege sufficient facts to state a plausible claim for retaliation under Title VII against St. James Parish School Board. Although Plaintiff asserts that she engaged in protected activity by reporting "the illegal activity" of her coworkers, Plaintiff is referring to actions taken by Defendants regarding the special education services offered to students in St. James Parish.[156] Thus, Plaintiff has failed to allege that she engaged in a protected activity under Title VII, as that phrase is defined in this Circuit. Plaintiff has also failed to allege an "adverse employment action," as the actions by Defendants of which she complains fall into the category of "petty slights, minor annoyances, and simple lack of good manners" that employees regularly encounter in the workplace, and which the Supreme Court has recognized are not actionable retaliatory conduct.[157]

Additionally, "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."[158] In determining whether an employer's actions constitute a constructive discharge, the Fifth Circuit has instructed this Court to consider the following relevant factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering,

---

[155] *Id.*
[156] R. Doc. 1 at pp. 3-5.
[157] *Aryain*, 534 F.3d at 485 (citing *White*, 548 U.S.at 68, 126 S.Ct. 2405).
[158] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (quotation and internal quotation marks omitted).

harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[159]  While Plaintiff has alleged "harassment" by the defendants, she has not alleged that the harassment by her employer – St. James Parish School Board – was calculated to encourage her to resign.  Thus, even considering the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to allege sufficient facts to show that a reasonable employee in her position would have felt compelled to resign.  As such, the Court finds that Plaintiff has failed to state a plausible claim against St. James Parish School Board for retaliation under Title VII, and that Count 1 must be dismissed as to it.

### b.  <u>Count 2: Discrimination Under Title VII.</u>

To state a claim for race discrimination under VII, a plaintiff must allege: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that others similarly situated were more favorably treated.[160]  The Court finds that Plaintiff's Complaint falls short of stating a claim for race discrimination under Title VII against St. James Parish School Board.  While Plaintiff alleges that she is African American, at no point does she allege that she was discriminated against based upon her race.  Instead, Plaintiff reasserts the same "materially adverse employment actions" alleged in Count 1 of the Complaint, and further asserts that "her emails and phone calls were ignored by her

---

[159] *McCoy*, 492 F.3d at 557 (citation omitted).
[160] *Williams v. Recovery School District*, 859 F. Supp. 2d 824, 830 (E.D. La. 2012) (quoting *Durkin v. U.S. Postal Serv.*, 54 Fed.Appx. 794, 2002 WL 31845206, at *1 (5th Cir. 2002)) (internal quotation marks omitted).

supervisors which made it impossible to complete her work and affected her job performance."[161]  Plaintiff does not allege that these actions were taken against her based upon her race.  Additionally, Plaintiff does not allege that others similarly situated were more favorably treated.  Instead, in a confusing paragraph of the Complaint, Plaintiff alleges that:

> Other non-African American and male employees were not treated like Plaintiff and were not left to figure out work assignments, not called derogatory names, reprimand [sic] publicly, encouraged to be called name [sic] by supervisors and colleagues, phone calls and emails regarding assignments that needed to be completed ignored, verbal attacks by supervisors, lied on [sic] about job performance and eventually constructively discharged.[162]

Such allegations are insufficient to state a viable claim against St. James Parish School Board for discrimination under Title VII.  As such, the claim must be dismissed.

### c.  Count 2: Discrimination Under La. R.S. 23:301.

Although not specifically mentioned in the substance of Count 2 of the Complaint, the heading of Count 2 indicates that Plaintiff is asserting a claim against the defendants, including St. James Parish School Board, based upon an alleged violation of the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301.[163]  As previously explained by this Court, "The LEDL – which prohibits an employer from discriminating against an individual based on his race, color, religion, sex, age or national origin – is similar in scope to Title VII's prohibitions against

---

[161] R. Doc. 1 at p. 9.
[162] *Id.*
[163] R. Doc. 1 at p. 9.

discrimination."[164]   As such, "Federal courts look to Title VII jurisprudence to interpret the LEDL."[165]   Thus, for the same reasons set forth above with respect to Plaintiff's Title VII claim for discrimination, the Court finds that Plaintiff has failed to assert a plausible LEDL claim against St. James Parish School Board.

### d. <u>Count 3: Harassment Under Title VII.</u>

In Count 3 of the Complaint, Plaintiff alleges that she was subjected to a hostile and offensive work environment based upon her race and sex, in violation of Title VII.[166]   To establish a Title VII violation based on race discrimination creating a hostile work environment, a plaintiff must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[167] "For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"[168]   Additionally, in determining whether a workplace constitutes a hostile work environment, courts must consider the frequency of the discriminatory conduct, its severity, whether it is

---

[164] *Harrell v. Orkin, LLC*, 876 F. Supp. 2d 695, 701 (E.D. La. 2012).
[165] *Id*. (citing *Baker v. Fedex Ground Package Sys.*, 278 Fed.Appx. 322, 327 (5th Cir. 2008)).
[166] R. Doc. 1 at pp. 9-10.
[167] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted).
[168] *Id*. (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."[169]

The Complaint contains three allegations regarding Plaintiff's Title VII harassment claim. First, Plaintiff alleges that she was subjected to:

> intimidating, hostile and offensive work environment which included being left to figure it out [sic] work assignments, called derogatory names, reprimand [sic] publicly, encouraged to be called name [sic] by supervisors and colleagues, phone call and emails regarding assignments that needed to be completed ignored [sic] and verbal attacks by supervisors, lied on [sic] about job performance and eventually constructively discharged by Defendants.[170]

Plaintiff then alleges that this conduct was due in part to her being a female and African American. Finally, Plaintiff alleges that, "The environment was severe and pervasive and altered the terms and conditions of her employment to the point that she was constructively discharged and had to get professional help."[171]

The Court finds these conclusory statements are insufficient to state a plausible claim for Title VII harassment against St. James Parish School Board. Although Plaintiff asserts the offensive conduct complained of was due to her race and gender, the conduct and comments at issue are all race and gender neutral. In fact, the Complaint is devoid of any allegations that the harassment at issue was motivated by a discriminatory animus towards Plaintiff based upon her race or gender. Indeed, a fair reading of the Complaint would find that any conduct towards Plaintiff was the result of internal complaints by the Plaintiff, whether well-founded

---

[169] *Ramsey*, 286 F.3d at 268 (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (internal quotation marks omitted).
[170] R. Doc. 1 at p. 9.
[171] *Id.*

or not. As such, the Court finds that Plaintiff has failed to state a Title VII harassment claim against St. James Parish School Board.

### e. **Count 4: Plaintiff's 42 U.S.C. § 1983 Claim.**

The Fifth Circuit has held that, "Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible."[172] To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy."[173] Thus, a plaintiff must identify: (1) an official policy or custom; (2) of which a policymaker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom.[174]

Count 4 of the Complaint contains no allegations that would support a § 1983 municipal liability claim. In Count 4, Plaintiff alleges that she was a public employee who engaged in protected activity when she reported the illegal activity of the defendants, and that, "Defendants harassed, verbally assaulted her, complained about her job performance, had her colleagues and coworkers ostracize her, make false accusations against her, spread rumors about , [sic] call her names and eventually constructively discharged her because she engaged in protected activity."[175] These allegations are insufficient to state a plausible § 1983 claim

---

[172] *Goudeau v. East Baton Rouge Parish School Bd.*, 540 Fed.Appx. 429, 437-38 (5th Cir. 2013) (quoting *Doe ex rel. Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998)).

[173] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

[174] *Valle*, 613 F.3d at 542 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

[175] R. Doc. 1 at p. 10.

against St. James Parish School Board, as there is no allegation of a violation of her constitutional rights or of a policy that was the moving force behind any such violation. Thus, even accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to state a viable § 1983 claim against St. James Parish School Board and that the claim must be dismissed.

### f.  **Count 5: Plaintiff's Defamation Claim.**

For the same reasons that the Court previously determined that the Complaint fails to state a plausible defamation claim against the individual defendants, the Court finds that the Complaint also fails to state a viable defamation claim against St. James Parish School Board.  To state a plausible defamation claim, a plaintiff must allege: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.[176]  Additionally, "The fault requirement is often set forth in the jurisprudence as malice, actual or implied."[177]

Plaintiff alleges in Count 5 that "Defendants," including St. James Parish School Board, made defamatory statements in the course and scope of Plaintiff's employment pursuant to a conspiracy and publicized the comments to Plaintiff's coworkers and supervisors.[178]  Plaintiff further asserts that, "False and defamatory statement [sic] were made concerning Plaintiff's job performance as well as her

---

[176] *Costello v. Hardy*, 2003-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139 (quoting *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559) (internal quotation marks omitted).
[177] *Costello*, 2003-1146 at p.12, 864 So.2d at 139 (citations omitted).
[178] R. Doc. 1 at p. 11.

reputation including allegations that she was not performing her work satisfactory [sic], she had mental health issues and was a troublemaker and roadblock."[179] Plaintiff further alleges that, "Defendants were at very [sic] least negligent in publication if not intentional."[180]  The Complaint is silent as to any specific allegation of defamation by St. James Parish School Board.

While a Complaint need not contain detailed factual allegations, it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[181]  Thus, under Fed. R. Civ. P. 8, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[182]  Plaintiff's threadbare Complaint, alleging that "Defendants" made false and defamatory statements regarding Plaintiff's work and communicated such statements to Plaintiff's co-workers, without anything more, fails this test.  The Complaint is silent as to who the "false accusations" were spread to, as well as the content of the "false accusations."  As such, Plaintiff has failed to state a plausible defamation claim against St. James Parish School Board, and Count 5 must be dismissed as to it.

### g.  <u>Count 6: Plaintiff's Claim for Intentional Infliction of Emotional Distress</u>.

As previously discussed, a claim for intentional infliction of emotional distress requires a showing that: (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff's emotional distress was severe; and (3) the defendant desired to inflict

---

[179] *Id.*
[180] *Id.*
[181] *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[182] *Ashcroft,* 556 U.S. at 677–78, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.[183]  In Count 6 of the Complaint, Plaintiff alleges that, "Defendants' conduct was extreme and outrageous and include [sic] a 4-year span of name calling, beratement in front of individuals, poor job performance, threats, intimidation tactics, and eventually constructive discharge," and that her emotional distress "was severe and required her to be placed on medication and see a mental health professional."[184]  Plaintiff further alleges that, "Defendants desired to inflict severe emotional distress or substantially [sic] certain to result from conduct."[185]

These allegations, without more, fail to assert a plausible claim for intentional infliction of emotional distress against St. James Parish School Board.  First, these allegations do not allege "extreme and outrageous" conduct, as Plaintiff fails to allege any specific conduct by St. James Parish School Board.  The Court finds these allegations more akin to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," which do not rise to the level of defamation.[186]  Additionally, Plaintiff fails to allege any facts suggesting that St. James Parish School Board intended to inflict severe emotional distress upon her or that it could have foreseen that such distress would result, beyond a mere conclusory statement to that effect.  As such, even accepting all of Plaintiff's claims as true, the Court finds that Plaintiff has failed to assert a plausible claim against St. James Parish School

---

[183] *McCoy v. City of Shreveport,* 492 F.3d 551, 563 (5th Cir. 2007).
[184] R. Doc. 1 at pp. 11-12.
[185] *Id.* at p. 12.
[186] *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991).

Board for intentional infliction of emotional distress, and that the claim must be dismissed.

### h. Count 7: Plaintiff's Claim for Alleged Violations of Louisiana's Whistleblower Statute, La. R.S. 23:967.

Louisiana's Whistleblower statute, La. R.S. 23:967, provides, in pertinent part, that:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of the law.[187]

One of our sister courts has held that to establish a prima facie case under the Louisiana Whistleblower statute, a plaintiff "must establish that she possessed the *knowledge* that a certain workplace practice amounted to a violation of state law *at the time* she refused to participate in the practice or informed the employer of her intention to report the practice to the authorities."[188]

Here, Plaintiff alleges that, "Defendants' violated [sic] Louisiana Bulletin 1508 special education policies and procedures and IDEA," that she continuously advised Defendants of these violations, that she refused to participate in the prohibited practice and that Defendants retaliated against

---

[187] La. R.S. 23:967(A).
[188] *Williams v. Hospital Service District of West Feliciana Parish, Louisiana*, 250 F. Supp. 3d 90, 97 (M.D. La. 2017) (citing *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, 1215) (emphasis in original).

her when she refused to do so.[189]  Specifically as to St. James Parish School

Board, Plaintiff alleges that:

> St. James School Board implicit [sic] policy, practice and custom was to engage in illegal activity outlined in Paragraph (1-19) [sic] . . . and was the main force behind the practices outlined . . . and was carried out by Superintendent P. Edward Cancienne with instruction of the Saint James Parish School Board or with blind indifference by the Saint James Parish School Board.[190]

Plaintiff asserts that she was informed by Cancienne that "he was in talks with

the Saint James Parish School Board that would change the currently illegal

policy to allow Saint James Parish principals to override evaluations."[191]

Plaintiff also alleges that when she refused to engage in the illegal activity,

Detillier informed her that St. James Parish School Board would be changing

the special education policies and procedures and that Plaintiff "would then be

required to follow the policies imposed by the School Board, as the district

policy would then override the state policy."[192]

Plaintiff further alleges that Cook informed her that she would "speak

to them and nothing was again done, and the illegal activity, harassment, and

intimidation got worse for Plaintiff."[193]  Plaintiff alleges that the actions

complained of in her Complaint "had been going on for over 4 years with

several complaints, and thus became the custom of Saint James Parish School

---

[189] R. Doc. 1 at p. 12.
[190] *Id.* at p. 13.
[191] *Id.*
[192] *Id.*
[193] *Id.*

Board."[194]  Plaintiff further alleges that she followed St. James Parish School Board's reporting policy by bringing her complaints to the principal, then to supervisors, then to the Superintendent and then to Cook, but that no remedial action was ever taken.   Finally, Plaintiff alleges that she emailed her resignation letter directly to St. James Parish School Board and that no one reached out to her even after she returned on January 3, 2020 to drop off equipment and attend a meeting with Detillier, Cook, Steib and Carl Webre.[195]

Noticeably absent from Plaintiff's Complaint is any allegation that St. James Parish School Board violated Louisiana law.   While Plaintiff asserts that the "Defendants" violated "Louisiana Bulletin 1508 special education policies and procedures and IDEA," Plaintiff does not provide any further information regarding this allegation.   The Court notes that Louisiana Bulletin 1508 is a reference to the "Pupil Appraisal Handbook" set forth in Title 28 of the Louisiana Administrative Code, and that Plaintiff fails to specify what provision(s) St. James Parish School Board allegedly violated.   Additionally, Plaintiff has failed to allege any reprisal by St. James Parish School Board for refusing to participate in the alleged illegal activity, other than a general allegation that "the illegal activity, harassment, and intimidation got worse for Plaintiff."[196]  The Court finds these conclusory allegations insufficient to state a plausible claim against St. James Parish School Board for violating

---

[194] *Id.*
[195] *Id.*
[196] *Id.*

Louisiana's Whistleblower statute, La. R.S. 23:967.   Count 7 is, therefore, dismissed as to St. James Parish School Board.

### C. Leave to Amend

In her Opposition brief, Plaintiff asserts that the Motions to Dismiss should be denied or, "if it is granted Plaintiff should be allowed to amend complaint [sic] consistent with courts [sic] ruling."[197]   While the Court will "freely give leave [to amend] when justice so requires,"[198] leave to amend "is by no means automatic."[199] In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[200] However, "i[t] is within the district court's discretion to deny a motion to amend if it is futile."[201]   The Fifth Circuit has stated that while it has not specifically defined "futility" in this context, "we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be granted."[202]

The Court has already determined that amendment would be futile with respect to Counts 1, 2, 3 and 7 as to the individual defendants, and that those claims must be dismissed with prejudice.   As to the remaining claims against the individual

---

[197] R. Doc. 17 at p. 5.
[198] Fed. R. Civ. P. 15(a).
[199] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[200] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[201] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[202] *Id.*

defendants and all of the claims against St. James Parish School Board, the Court finds that there is no indication of bad faith or dilatory motive on Plaintiff's part. The Court further finds that this is not a situation in which Plaintiff has repeatedly failed to cure deficiencies in her Complaint through amendments previously allowed. Plaintiff has never moved to amend her Complaint. The Court, however, questions the futility of any amendment in this case. For example, Plaintiff is silent as to what additional facts she could or would plead to assert a plausible claim under 42 U.S.C. § 1983 or to assert a plausible claim for defamation or intentional infliction of emotional distress. Plaintiff is also silent as to what additional facts she could allege to assert plausible claims against St. James Parish School Board.

The Court further notes that Plaintiff has been on notice of the basis for Defendants' Motions to Dismiss since July 15, 2020, when the Motions were filed, and has failed to move to amend her Complaint. The Court recognizes, however, that on January 11, 2021, Plaintiff filed a Motion to Modify Scheduling Order, asking the Court to extend the deadline for filing amended pleadings by 30 days from the Court's ruling on the instant Motions to Dismiss.[203] The Court denied the Motion to Modify as premature, stating that, "The Court will determine whether to grant Plaintiff an opportunity to amend her Complaint when the Court addresses the two Motions to Dismiss."[204] As such, the Court finds that granting Plaintiff leave to amend her Complaint is warranted in this case. Exercising the discretion afforded under Fed. R. Civ. P. 15 and the pertinent jurisprudence, Plaintiff shall have seven (7) days from

---

[203] R. Doc. 50.
[204] R. Doc. 58.

the date of this Order to amend her Complaint with respect to her allegations pertaining to St. James Parish School Board and with respect to her allegations in Counts 4, 5, and 6 as to the individual defendants.

### D. Defendants' Request for Attorney's Fees

In both Motions to Dismiss, Defendants request an award of attorney's fees.[205] The argument in support of the request for attorney's fees is identical in the two Motions – Defendants assert that 42 U.S.C. § 1988 allows a prevailing defendant to recover attorney's fees upon a finding that a plaintiff's Title VII or § 1983 claim was frivolous unreasonable or without foundation.[206]  Defendants also assert that La. R.S. 23:967(D) and La. R.S. 23:303(B) allow attorney's fees to a prevailing defendant where frivolous claims are brought.[207]  Beyond citing the foregoing legal authority, Defendants make no effort to explain why attorney's fees should be awarded under the facts of this case, seemingly implying that most of Plaintiff's claims are frivolous. As set forth in this Order, the Court disagrees.  As such, the Court denies Defendants' request for attorney's fees.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Paul McDonald's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss[208] is **DENIED in part and GRANTED in part**.  The Motion is **DENIED** to the extent that McDonald seeks dismissal under

---

[205] R. Doc. 14-1 at p. 52; R. Doc. 16-1 at p. 53.
[206] R. Doc. 14-1 at p. 52 (citing *Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2005, 180 L.Ed.2d 45 (2011)); R. Doc. 16-1 at p. 53 (citing *Fox, supra*).
[207] R. Doc. 14-1 at p. 52; R. Doc. 16-1 at p. 53.
[208] R. Doc. 14.

Fed. R. Civ. P. 12(b)(1), but the Motion is **GRANTED** to the extent that McDonald seeks dismissal under Rule 12(b)(6).  Plaintiffs' claims asserted against McDonald in Counts 1, 2, 3 and 7 of the Complaint are **DISMISSED WITH PREJUDICE**, while Plaintiff's claims against McDonald asserted in Counts 4, 5 and 6 are **DISMISSED WITHOUT PREJUDICE.**  Plaintiff shall have **seven (7) days** from the date of this Order to file an amended complaint addressing the deficiencies in Counts 4, 5 and 6 with respect to McDonald.

      **IT IS FURTHER ORDERED** that the Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss, filed by St. James Parish School Board, P. Edward Cancienne, Jr., Kelly Cook, Anne Detillier, Vondra Steib, Sabra Robichaux, Hollie Folse, and Becky Louque,[209] is also **DENIED in part and GRANTED in part.**  The Motion is **DENIED** to the extent that these defendants seek dismissal under Fed. R. Civ. P. 12(b)(1), but the Motion is **GRANTED** to the extent that these defendants seek dismissal under Rule 12(b)(6).  Plaintiffs' claims asserted against Cancienne, Cook, Detillier, Steib, Robichaux, Folse and Louque in Counts 1, 2, 3 and 7 of the Complaint are **DISMISSED WITH PREJUDICE**, while Plaintiff's claims against Cancienne, Cook, Detillier, Steib, Robichaux, Folse and Louque asserted in Counts 4, 5 and 6 are **DISMISSED WITHOUT PREJUDICE.**  Plaintiff's claims asserted against St. James Parish School Board in Counts 1, 2, 3, 4, 5, 6 and 7 are likewise **DISMISSED WITHOUT PREJUDICE.**  Plaintiff shall have seven (7) days from the date of this Order to file an amended complaint addressing the deficiencies in Counts 4, 5 and 6

---

[209] R. Doc. 16.

with respect to Cancienne, Cook, Detillier, Steib, Robichaux, Folse and Louque, and to address the deficiencies in Counts 1-7 with respect to St. James Parish School Board.

**IT IS FURTHER ORDERED** that Defendants' request for attorney's fees is **DENIED.**

New Orleans, Louisiana, March 31, 2021.

**WENDY B. VITTER**
**United States District Judge**