# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

LATASHA CUBAS                                   CIVIL ACTION

VERSUS                                          NO. 20-1322-WBV-KWR

ST. JAMES PARISH SCHOOL                         SECTION: D (4)
BOARD, ET AL.

## ORDER AND REASONS

Before the Court is a Motion for Judgment on the Pleadings and/or Motion for Summary Judgment of St. James Parish School Board and its Individual Defendants on All Claims.[1]  Plaintiff opposes the Motion.[2]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[3]

This matter is before the Court on Defendants' second attempt to dismiss the employment discrimination claims filed by plaintiff, Latasha Cubas.[4]  On April 16, 2021, Plaintiff filed a Second Amended Complaint and Jury Demand ("Second Amended Complaint"),[5] against St. James Parish School Board, P. Edward Cancienne, Jr., in his individual and official capacity as Superintendent of St. James

---

[1] R. Doc. 112.
[2] R. Doc. 126.
[3] In the interest of judicial economy, and because the factual background of this case was extensively detailed in the Court's March 31, 2021 Order and Reasons on the Defendants' prior motions to dismiss (*See,* R. Doc. 95), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.
[4] R. Doc. 95.
[5] *See*, R. Docs. 99, 101, & 104.

Parish School Board, Kelly Cook, in her individual and official capacity as Administrator/Director of Student Services of St. James Parish School Board, Anne Detillier, in her individual and official capacity as Director of Teaching and Learning K-12 of St. James Parish School Board, Vondra Steib, in her individual and official capacity as Director of Special Education of St. James Parish School Board, Sabra Robichaux, in her individual and official capacity as Pupil Appraisal/504 Coordinator of St. James Parish School Board, Hollie Folse, in her individual and official capacity as principal of Paulina Elementary School, Becky Louque, in her individual and official capacity as principal of Cypress Grove School, and Paul McDonald, in his individual and official capacity as Special Education Consultant at St. James Parish School Board.[6]  Unlike her original Complaint, Plaintiff asserts claims against each of the individual defendants, Cancienne, Cook, Detillier, Steib, Robichaux, Folse, and McDonald, in their individual and official capacities as agents of St. James Parish School Board "and employer of Plaintiff."[7]

Plaintiff alleges that she was employed as a school psychologist by St. James Parish School Board between 2015 and 2019, during which she continuously complained of illegal activity in the special education department to the individual defendants.[8]  Plaintiff alleges that after reporting these illegal activities, she was labeled a troublemaker and a roadblock, she was verbally harassed by the individual

---

[6] R. Doc. 104 at pp. 1-2.  Plaintiff alleged that she exhausted her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on February 7, 2020, which issued a right to sue letter that same day.  *Id*. at pp. 2-3.  Because Plaintiff subsequently dismissed McDonald from this litigation, the Court will not include Plaintiff's allegations against him in this Order.  *See,* R. Doc. 158.

[7] R. Doc. 104 at pp. 1-2.

[8] *Id*. at pp. 3-13.

defendants, and she was treated differently due to her race.[9]  Plaintiff claims that she also reported the illegal activity to third-parties, including the National Association of School Psychologists, the United States Department of Education, the United States Department of Justice, parents and children advocates.[10]  Plaintiff claims that the illegal conduct included changing student evaluations, illegally falsifying official documents, discriminating against minorities and special education students, destroying test protocols and student folders, failing to provide special education services and refusing to provide other needed services, allowing school principals to unilaterally make the decisions of what special education services the students were receiving and which students would qualify for those services, changing students' Individualized Education Plans ("IEP's") without parental participation or knowledge, backdating official documents, discriminating against African-American special education students by imposing harsher disciplinary consequences upon them, segregating students by race and status through school scheduling, failing to appropriately evaluate African-American students for gifted services, and changing evaluations "to change the trajectory of children's lives to fit the nonscientific evaluation of principal [sic] and make evaluation due to political connection and who parents are and not the abilities of the child."[11]

Plaintiff contends that she refused to comply with the illegal activity and "continuously complained and reported the illegal activity to her supervisors

---

[9] *Id.* at pp. 5-7.
[10] *Id.* at p. 3.
[11] *Id.* at pp. 3-4.

throughout her employment," with the last major incidents occurring on August 20, 2019 and October 15, 2019.[12]   While not articulated as clearly as in her original Complaint,[13] the Court surmises the following regarding Plaintiff's allegations concerning these two meetings.   Plaintiff asserts that on August 20, 2019, she was called into a meeting with Cancienne, the Parish Superintendent, and 22 other people, during which Cancienne told Plaintiff she could "get on the boat or get off the boat," and that school principals would be making decisions regarding special education.[14]   When Plaintiff challenged this directive as illegal during the meeting, Cancienne allegedly told Plaintiff to make her evaluations fit the determinations made by the principal, and then belittled and berated Plaintiff.[15]   Plaintiff alleges that Cancienne indicated that his new directive should apply, regardless of whether the student qualified for special education under Louisiana Bulletin 1508 and the Individuals with Disabilities Education Act ("IDEA").[16]   Plaintiff alleges that the harassment, complaints about her job performance, retaliation, and treatment by her supervisors got worse after this meeting.[17]   Plaintiff also asserts that after the meeting, Folse "began to make false accusations about Plaintiff's job performance, questioning Plaintiff's work, spreading lies and rumors about the plaintiff, making the job more difficult by adding unnecessary tasks to job responsibilities," and that

---

[12] *Id.* at p. 5, ¶ 10 & p. 6, ¶ 13.
[13] R. Doc. 1 at pp. 5-8.
[14] R. Doc. 104 at pp. 8-9, ¶ 31.
[15] *Id.* at p. 9, ¶¶ 32-33.
[16] *Id.* at ¶ 33.
[17] *Id.* at p. 10, ¶¶ 39 & 42.

Cook told Plaintiff that "they" were going to get rid of her.[18]  Plaintiff asserts that she reported all of the behavior to Robichaux, Steib, Detillier, and Cook.[19]

Plaintiff alleges that during the October 15, 2019 meeting, she told her supervisors, Steib, Detillier, Cook, and Folse, that she would not change special education evaluations or break the law, and that she was told "by her supervisors," to "just bend the law" and to "water herself down."[20]  During that meeting Plaintiff "again refused to comply and informed everyone present that what was being done was illegal."[21]  According to Plaintiff, Steib indicated during the meeting that other Pupil Appraisal members were willing to "sign off on evaluations and give the principals what they wanted," but that Plaintiff was refusing to do so.[22]  Plaintiff claims she stated during the meeting that these evaluations were based upon falsified data, that Detillier, Steib, and Cook knew about the falsification of data, and that Detillier instructed Plaintiff to "make up data for evaluations."[23]  Plaintiff alleges that she began experiencing mental health issues due to the workplace conditions and submitted her letter of resignation on December 20, 2019.[24]

Plaintiff's Complaint alleges seven counts.[25]  In Counts 1 through 3 of the Second Amended Complaint, Plaintiff asserts Title VII claims against St. James

---

[18] *Id.* at ¶ 40.
[19] *Id.* at ¶ 41.
[20] *Id.* at ¶ 43.
[21] *Id.*
[22] *Id.* at ¶ 44.
[23] *Id.* at p. 11, ¶ 45.
[24] *Id.* at ¶¶ 46-47.
[25] The Court notes, and is puzzled by, Plaintiff's Opposition to the Motion for Summary Judgment, wherein Plaintiff asserts, in the final line, that Plaintiff's "Section 1981 claims are strong."  R. Doc. 126 at p. 25.  There are no 42 U.S.C. § 1981 claims asserted in Plaintiff's Second Amended Complaint.

Parish School Board for retaliation, discrimination, and harassment based upon her race and gender.[26]  While not a model of clarity, Plaintiff seems to assert that St. James Parish School Board should be held vicariously liable for the actions of Cancienne, Detillier, Folse, Louque, Robichaux, and Steib because they are supervisors for purposes of Title VII.[27]  Plaintiff also asserts a race discrimination claim against St. James Parish School Board in Count 2, based upon Louisiana's Employment Discrimination Law, La. R.S. 23:301, *et seq*.[28]  Plaintiff asserts a claim for "Section 1983 Retaliation" against "Defendant" in Count 4, but does not identify any defendant by name.[29]  Plaintiff appears to seek to hold St. James Parish School Board liable under 42 U.S.C. § 1983 through its policy, practice and custom of engaging in illegal activity.[30]

In Count 5, Plaintiff asserts a defamation claim against all of the individual defendants and St. James Parish School Board, although Plaintiff only identifies statements made by Detillier and Folse.[31]  Plaintiff asserts a claim for intentional infliction of emotional distress in Count 6 against unnamed "Defendants" based upon the "extreme and outrageous" conduct of Cancienne, Detillier, Folse, Robichaux, and Louque in asking Plaintiff to violate special education laws, state laws, and federal laws between 2015 and 2019.[32]  In Count 7, Plaintiff asserts a claim against St. James

---

[26] *Id*. at pp. 17-19.
[27] R. Doc. 104 at p. 16.
[28] Mistakenly referenced in Plaintiff's Second Complaint as "Louisiana R.S. 23:01 et. al."  R. Doc. 104 at p. 18.
[29] R. Doc. 104 at p. 19.
[30] *Id*. at pp. 19-20.
[31] *Id*. at pp. 20-21.
[32] *Id*. at p. 21.

Parish School Board for violating the Louisiana Whistleblower statute, La. R.S. 23:967, based upon Cancienne, Detillier, Folse, Robichaux, and Louque asking Plaintiff to bend, break, or twist the law, including Louisiana Bulletin 1508 and the IDEA.[33]  Plaintiff seeks damages in the form of back pay, front pay, non-pecuniary losses including emotional distress, damages for loss of enjoyment and humiliation, past and future pecuniary losses, punitive damages, and attorneys' fees and costs.[34]

The St. James Parish School Board, Cancienne, Detillier, Steib, Robichaux, Folse, and Louque (collectively, "Defendants," or individually by their last name) filed the instant Motion for Judgment on the Pleadings and/or Motion for Summary Judgment on May 3, 2021, seeking to dismiss all of Plaintiff's claims.[35]  Plaintiff opposes the Motion, asserting that she can prove each of the claims asserted in the Second Amended Complaint.[36]  Both parties rely extensively upon deposition testimony and sworn affidavits in support of their respective positions.

The Court feels compelled to note that, after a thorough review of the briefs and enormous volume of evidence submitted by the parties,[37] both briefs are, at times, completely unintelligible or indecipherable due to multiple cross-references to other arguments made within each brief.[38]  Further, the Court notes that, in what appears

---

[33] *Id*. at pp. 21-22.
[34] *Id*. at p. 22.
[35] R. Doc. 112.  The Court notes that McDonald filed a similar Motion for Judgment on the Pleadings and/or Motion for Summary Judgment on April 28, 2021 (R. Doc. 109).  Plaintiff, however, subsequently moved to dismiss her claims against McDonald without prejudice on August 27, 2021 based upon a partial settlement.  R. Doc. 155.  The Court granted Plaintiff's Motion on September 7, 2021, and dismissed her claims against McDonald without prejudice.  R. Doc. 158.  The Court then issued an Order denying McDonald's Motion as moot in light of the dismissal.  R. Doc. 159.
[36] R. Doc. 126.
[37] *See*, R. Docs. 112-4 through 112-18; R. Docs. 126-1 through 126-10; R. Docs. 203-1 through 203-12.
[38] *See*, R. Docs. 112-3 & 126.

to be an attempt to circumvent the Court's Order denying her request to exceed the 25-page limit,[39] Plaintiff's Opposition brief contains extensive footnotes, in a font size so small it should have resulted in a deficiency notice, most of which contain a laundry list of citations to numerous pages of deposition testimony, Plaintiff's sworn Affidavit, and 26 surreptitiously recorded conversations, none of which are transcribed or have transcriptions provided, and which also contain significant portions of Plaintiff's legal arguments.[40]   In short, the Court has expended significant judicial resources in reviewing the instant Motion, reviewing and deciphering the Opposition brief, and attached exhibits, and strongly discourages counsel from using these tactics in the future.

## II.   LEGAL STANDARD

### A. Summary Judgment

While Defendants styled the instant Motion as a "Motion for Judgment on the Pleadings and/or Motion for Summary Judgment," Defendants fail to specify the legal standard applicable to their Motion.[41]   As previously mentioned, however, Defendants and Plaintiff both refer to matters beyond the Second Amended Complaint, relying substantially upon deposition testimony of the parties and sworn affidavits to support their respective arguments, which are attached as exhibits to their pleadings.[42]   As such, the Court construes the instant Motion as a motion for summary judgment.

---

[39] R. Docs. 119 & 123.
[40] *See, generally*, R. Doc. 126.
[41] *See*, R. Docs. 112 & 112-3.
[42] *See*, R. Docs. 112-4 through 112-18; R. Docs. 126-1 through 126-9.

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[43]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[44]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[45]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[46]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[47]  The nonmoving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[48]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue,

---

[43] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[44] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[45] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[46] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[47] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[48] *Id.* at 1265.

the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[49]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[50]  "When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment."[51]  "The district court has no duty to survey the entire record in search of evidence to support a non-movant's position."[52]

## III.   ANALYSIS

### A. Plaintiff's Request to Strike the Motion and the Exhibits Attached Thereto.

In the first (of many) footnotes in the Opposition brief, Plaintiff seems to argue that the instant Motion should be stricken under Fed. R. Civ. P. 37(b)(2)(A) because Defendants "failed to produce transcripts even after it [sic] was requested.  Kelly Cook refers to reading transcripts of the tape recordings.  However, they were not produced in accordance with discovery and concealing documents, [sic] and thus, Defendants [sic] Motion for Summary Judgment should be stricken."[53]  Rule 37(b)(2)(A) allows

---

[49] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[50] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

[51] *Patterson v. Greenbrier Hospital, LLC*, Civ. A. No. 19-9234, 2020 WL 2037194, at *2 (E.D. La. Apr. 28, 2020) (citing *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)).

[52] *Patterson*, Civ. A. No. 19-9234, 2020 WL 2037194 at *2 (citing *Jones*, 82 F.3d at 1338).

[53] R. Doc. 126 at p. 1, n.1.  Perplexingly, the Court notes that this footnote contains three additional footnotes, all numbered "1," but contains no explanation for the footnotes within a footnote.  *Id*.

this Court to impose sanctions, and to strike pleadings in whole or in part, when a party "fails to obey an order to provide or permit discovery."[54]  Plaintiff, however, has failed to specify what discovery order Defendants purportedly failed to obey.  Further, the Court notes that Plaintiff has no motion to compel pending before the Court, nor was there one pending when Plaintiff's Opposition brief was filed. Although Plaintiff's request is not properly before the Court in a formal motion, the Court denies Plaintiff's request to strike the Motion as baseless.

The Court further denies Plaintiff's request, asserted in the second footnote of the Opposition brief, to strike all of Defendants' exhibits to the instant Motion as hearsay.[55]  Citing Fifth Circuit authority, Plaintiff argues that the exhibits cannot be used to support summary judgment.[56]  The legal authority cited by Plaintiff does not support her position.   Further, Fed. R. Civ. P. 56 specifies that depositions and affidavits can be used to support or oppose a motion for summary judgment.[57]  As such, the Court rejects as baseless Plaintiff's request to strike Defendants' exhibits to the instant Motion.

### B. Defendants' Request to Strike Portions of the Second Amended Complaint, Plaintiff's Affidavit, and the Exhibits Thereto, Including 26 Recordings.

In the last two pages of their Memorandum in Support, Defendants assert that Paragraphs 11 and 12 of the Second Amended Complaint, as well as the "Timeline of

---

[54] Fed. R. Civ. P. 37(b)(2)(A).
[55] R. Doc. 126 at p. 1, n.2  The Court, again, notes that this footnote contains two additional footnotes, both numbered "2," but contains no explanation for the footnotes within a footnote.
[56] Id. (citing *Waste Management of Louisiana, LLC v. River Birch, Incorporated*, 920 F.3d 958 (5th Cir. 2019); *Koerner v. CMR Construction & Roofing, LLC*, 910 F.3d 221, 227 (5th Cir. 2018); *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991)).
[57] Fed. R. Civ. P. 56(c)(1)(A).

Events With Cliff notes," on pages 13 through 16 of the Second Amended Complaint, are improper and should be stricken from the Second Amended Complaint and disallowed in opposition to their Motion.[58]  Defendants claim that Paragraph 11 lists 38 occasions when Plaintiff allegedly reported illegal activity to her supervisors, some of which are not specific dates, and that Paragraph 12 contains a "laundry list of 12+ laws" that Plaintiff claims were violated, but that it is unclear what alleged law was violated when, by whom, or under what circumstances.[59]  Defendants likewise assert that the "Timeline" "is a jumble of dates, laws, and listing of individuals including some defendants, some non-parties and other unspecified 'teachers and principals.'"[60] Defendants contend that it is unclear what the purported "Cliff Notes" are, and point out that Plaintiff adopts by reference her Affidavit and "25+ tape recordings," which were submitted as exhibits to a prior pleading filed by Plaintiff.[61]  Defendants seem to assert that these portions of the Second Amended Complaint should be stricken on the grounds that, "A complaint which violates Rule 8 may be dismissed when it is so verbose, confused [sic] and redundant that its true substance, if any, is well disguised."[62]

Additionally, in a footnote, Defendants take issue with Plaintiff's Affidavit, attached as an exhibit to her Opposition brief,[63] asserting that defense counsel "has never received a complete copy of the purported affidavit, as it was sent piecemeal in

---

[58] R. Doc. 112-3 at p. 40.
[59] *Id.*
[60] *Id.*
[61] *Id.* (*citing* R. Docs. 97-7 & 97-8).
[62] R. Doc. 112-3 at p. 40 (citing authority).
[63] R. Doc. 126-6.

14 separate emails, out of order, and missing pages."[64]  Defendants further assert that Plaintiff's counsel "has refused to provide a complete, intelligible copy of the binder and Cliff Notes filed in the record and provided to the Court, despite the defendants' request."[65]  Defendants assert that the Affidavit is 48 pages long and that the exhibits thereto span approximately 743 pages.  Defendants then complain that the tape recordings, attached as "Exhibit 6-26,"[66] are "25+ in number and comprise approximately 21 hours of surreptitiously recorded conversations."[67]  Defendants assert that, "All of these references are inappropriate and should be stricken."[68]  Defendants further assert that, "The sham affidavit doctrine prevents a party who has been deposed from introducing an affidavit that contradicts that person's deposition testimony without explanation because 'a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.'"[69]

The Court concludes that Defendants have failed to cite a sufficient legal basis to support their request for the Court to strike Paragraphs 11 and 12 of the Second Amended Complaint, the "Timeline of Events With Cliff notes" contained therein, or the exhibits submitted in support of Plaintiff's Opposition brief.  Even though Defendants' request is not properly before the Court in a formal motion, the Court denies Defendants' request to strike Plaintiff's Affidavit and the exhibits thereto,

---

[64] R. Doc. 112-3 at p. 40, n.189.
[65] *Id*. (emphasis in original).
[66] R. Doc. 126-6.
[67] R. Doc. 112-3 at p. 40, n. 189.
[68] *Id*.
[69] *Id*. at p. 41 (quoting *Doe v. ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *Free v. Wal-Mart*, 815 Fed.Appx. 765 (5th Cir. 2020)).

including the 26 recordings.[70]  To the extent Defendants seek to strike Plaintiff's Affidavit, the Court likewise rejects that request as meritless.  While Defendants seem to imply that Plaintiff's Affidavit should be excluded under the "sham affidavit doctrine,"[71] Defendants fail to point out any portions of the Affidavit that contradict Plaintiff's deposition testimony.  "Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'"[72]  The Fifth Circuit has instructed that, "Generally, '[i]n considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier' statement."[73]  Further, "'In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made' earlier."[74]  Accordingly, the Court denies Defendants' request to strike Plaintiff's Affidavit.

### C. Plaintiff's Claims Against the Individual Defendants in Their Individual and Official Capacity as Agents of St. James Parish School Board and as Plaintiff's Employer.

The Court feels compelled to address Plaintiff's egregious attempt to circumvent a prior ruling by this Court by suing the individual defendants in their official capacities as "agents" of St. James Parish School Board and "as Plaintiff's

---

[70] R. Doc. 126-6.
[71] R. Doc. 112-3 at p. 41.
[72] *Winzer v. Kaufman County*, 916 F.3d 464, 472 (5th Cir. 2019) (quotation omitted) (citing authority).
[73] *Id.* (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980)).
[74] *Winzer*, 916 F.3d at 472 (quoting *Kennett-Murray*, 622 F.2d at 893).

employer."[75]  In her original Complaint, Plaintiff asserted claims against Cancienne, Cook, Detillier, Robichaux, Steib, Folse, and Louque in their individual and official capacities based upon their employment by the St. James Parish School Board, some of whom she referred to as her supervisors.[76]  In the Court's March 31, 2021 Order and Reasons regarding Defendants' Motions to Dismiss, this Court dismissed Plaintiff's Title VII claims asserted against the individual defendants in their official capacities because "Plaintiff has made no allegation that any of the individual defendants were her employer or her employer's agent."[77]  In the Second Amended Complaint, however, Plaintiff asserts claims against these individuals in their individual and official capacities and adds that these defendants acted as agents of the St. James Parish School Board and as Plaintiff's employer "for the purpose of Title VII."[78]  As noted, the Title VII claims asserted against the individual defendants, in both their individual and official capacities, were previously dismissed with prejudice,[79] and were omitted from the Second Amended Complaint.  The Court further notes that it did not grant Plaintiff leave to amend her allegations with respect to the capacity in which the individual defendants were sued.  Plaintiff's half-hearted attempt to circumvent the Court's prior Order did not go unnoticed.

---

[75] R. Doc. 104 at pp. 1-2.
[76] R. Doc. 1 at pp. 1-2 & 5.
[77] R. Doc. 95 at p. 20.
[78] R. Doc. 104 at pp. 1-2 & 3.
[79] R. Doc. 95.

### D. Counts 1-3: Plaintiff's Title VII Claims Against St. James Parish School Board for Retaliation, Discrimination, and Harassment.

In Counts 1-3 of the Second Amended Complaint, Plaintiff asserts claims against St. James Parish School Board for retaliation, discrimination, and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq*.[80] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII.[81] Defendants assert that St. James Parish School Board is entitled to summary judgment on all three of Plaintiff's Title VII claims because, among other things, she cannot prove race or sex discrimination.[82]

Although not addressed by Defendants in their Motion, Plaintiff does not allege any facts specific to St. James Parish School Board in Counts 1-3. Instead, Plaintiff asserts that St. James Parish School Board is vicariously liable "for actions of their [sic] employees under Title VII if they are considered supervisors, i.e., if the person can take tangible employment actions."[83] Plaintiff further asserts that Robichaux, Detillier, Steib, Folse, Louque, and Cancienne are supervisors because they "could and did take tangible employment action against Plaintiff."[84] On the first page of her Opposition brief, Plaintiff similarly asserts in a heading that, "Saint James Parish

---

[80] R. Doc. 104 at p. 17.
[81] *Williams v. Recovery School District*, 859 F. Supp. 2d 824, 830 (E.D. La. 2012) (*citing* 42 U.S.C. § 2000e-3(a)).
[82] R. Doc. 112-3 at pp. 17-20.
[83] R. Doc. 104 at p. 16.
[84] R. Doc. 104 at p. 16. This is not abundantly clear from the Opposition brief, as Plaintiff's allegations regarding the vicarious liability of St. James Parish School Board appear prior to, and in a separate "Count[]/Law" from, her Title VII claims. *Id.* at pp. 16-18.

School Board is vicariously liable under federal and state law."[85]  In a footnote, which contains Plaintiff's arguments on the issue, Plaintiff asserts that, "because all the actors in this case were Plaintiff [sic] supervisors or made the Plaintiff's supervisors by Dr. Cancienne, vicarious liability applies, and Saint James Parish School Board ("SJPSB") can be held liable for actions of its employees."[86]   Plaintiff asserts elsewhere in the Opposition brief that:

> Folse and Louque were not in chain of command according to the organizational chart but were individuals Plaintiff had to report to because she was evaluating the students at their schools, was housed, and working out of the schools and Dr. Cancienne told Plaintiff she had to listen to what Folse and Louque wanted and also had to make her evaluation fit what Folse and Louque wanted.  Thus, they were her supervisors under Title VII.[87]

The Supreme Court has held that, "an employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim."[88]  As explained by the Fifth Circuit, "A tangible employment action is defined as 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[89]  To the extent Plaintiff has also alleged that the individual defendants are all agents of St. James Parish School Board,[90] an "agent" for Title VII purposes is "someone who

---

[85] R. Doc. 126 at p. 1.
[85] R. Doc. 104 at pp. 1-2 & 3.
[86] R. Doc. 126 at p. 1, n.3.
[87] *Id.* at pp. 2-3 (citations omitted).
[88] *Vance v. Ball State University*, 570 U.S. 421, 450, 133 S.Ct. 2434, 2454, 186 L.Ed.2d 565 (2013).
[89] *Spencer v. Schmidt Elec. Co.*, 576 Fed.Appx. 442, 447 (5th Cir. 2014) (quoting *Vance*, 133 S.Ct. at 2439).
[90] R. Doc. 104 at pp. 1-2 & 3.

serves in a supervisory position and exercises significant control over . . . hiring, firing, or conditions of employment."[91]  The Fifth Circuit has interpreted the term "agent" to include an employee's immediate supervisors when those individuals exercise "the employer's traditional rights, such as hiring and firing."[92]

Here, the parties failed to address whether the individual defendants were "supervisors" for purposes of vicarious liability under Title VII in the Motion or Opposition brief.[93]  After reviewing the pleadings, however, it became apparent that Plaintiff failed to allege or proffer evidence showing that any of the individual defendants were "supervisors" for purposes of vicarious liability under Title VII. Because Defendants did not raise this as a basis for summary judgment in their Motion, the Court requested supplemental briefing on the issue pursuant to Fed. R. Civ. P. 56(f)(2).[94]  The parties timely-filed supplemental memoranda on December 15, 2021.[95]

In Plaintiff's Supplemental Memorandum on Vicarious Liability, Plaintiff essentially repeats the allegations in her Second Amended Complaint and Opposition brief that, "because all the actors in this case were Plaintiff's supervisors or made the

---

[91] *Spencer v. Schmidt Elec. Co.*, 576 Fed.Appx. 442, 449-50 (5th Cir. 2014) (quoting *Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 401 (5th Cir. 1996)) (internal quotation marks omitted).

[92] *Lea-Stokes v. Hunt County Mental Health and Mental Retardation Center*, Civ. A. No. 3:04-CV-0748, 2005 WL 1875442, at *1 (N.D. Tex. Aug. 5, 2005) (quoting *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir. 1994), *abrogated on other grounds by Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)) (internal quotation marks omitted).

[93] *See,* R. Docs. 112-3 & 126.

[94] R. Doc. 196; *See, Eastwood Corp. v. F.D.I.C.*, 14 F.3d 52 (5th Cir. 1993) ("Although a district court may grant summary judgment on a ground not raised in the summary judgment motion under certain circumstances, it may not do so without giving prior notice to the party against whom a judgment is entered.") (citing authority); *See also, Washington v. Copiah County Bd. Of Supervisor*, 740 Fed.Appx. 424, 426 n.3 (5th Cir. 2018).

[95] R. Docs. 203 & 204.

Plaintiff's supervisors by Dr. Cancienne, vicarious liability applies and Saint James Parish School Board can be held strictly liable for actions of its employees."[96]  As with her Opposition brief, Plaintiff relies exclusively upon citations to over 100 pages of exhibits to support her claim that each individual defendant is a "supervisor" for Title VII purposes.[97]   The Court notes that Plaintiff has submitted portions of five deposition transcripts for the Court's review, but has failed to provide a cover page stating whose deposition testimony is contained therein.[98]  Plaintiff also submitted an Exhibit that states, "Exhibit F is Exhibit 52 attached to Cubas Affidavit which is exhibit 7 in docket number 126."[99]  The Court notes that there is no "Exhibit 52" to Plaintiff's Affidavit.[100]  Plaintiff has also submitted an "LEA Plan of Supervision for School Psychologists,"[101] a document entitled, "SJP New Final & CIS Evaluation Form," which appears to contain two evaluations of Plaintiff,[102] as well as the "Organizational Chart Illustration" previously submitted by Defendants in support of the instant Motion.[103]  It appears that Plaintiff also submitted a copy of the St. James Parish School Board grievance policy,[104] a job description for Plaintiff's job as "PA Psychologist JD,"[105] and approximately 30 pages' worth of various documents,

---

[96] R. Doc. 203 at p. 2.  The Court notes that Plaintiff cites "Defendant Exhibit 247 already in evidence in Motion in Limine Docket No. 188."  *Id.* at n.2.  There is no "Exhibit 247" to Defendant's Motion. *Compare* R. Doc. 203 at pp. 3-4 *with* R. Doc. 126 at p. 1, n.3 & p. 10.

[97] R. Doc. 203 at pp. 2-3.

[98] *See*, R. Docs. 203-1, 203-2, 203-3, 203-4, 203-5.  The Court notes that the pages of the deposition transcript attached as R. Doc. 203-4 were not filed in chronological order.

[99] R. Doc. 203-6.

[100] *See*, R. Doc. 126-6.

[101] R. Doc. 203-7.

[102] R. Doc. 203-8.

[103] R. Doc. 203-9.  *See*, R. Doc. 112-5.

[104] R. Doc. 203-10.

[105] R. Doc. 203-11.

including "Pupil Appraisal School Assignments for SBLC, Initial Referrals, and Schoolwide Assistance 2015-2016," work emails that Plaintiff received between 2016 and 2019, a Pupil Appraisal Meeting Agenda from 2016, and a printout of a calendar for the month of January 2017.[106]

In Defendants' Brief Regarding Supervisory Status, Defendants assert that Plaintiff has not alleged that St. James Parish School Board is vicariously liable for any actions by Cook, and that judgment is warranted as to that claim.[107]   Defendants further assert that although Plaintiff's "reporting chain" was Robichaux, Steib, Detillier, and Cancienne, Plaintiff has failed to submit evidence showing that any of them were empowered by St. James Parish School Board to take tangible employment actions against Plaintiff, such as hiring, firing or reassigning her with significantly different responsibilities.[108]   Defendants likewise assert that there is no basis for finding that Folse or Louque, school principals, were Plaintiff's "supervisors" for purposes of Title VII.[109]

After reviewing the supplemental memoranda, as well as the evidence cited therein, the Court finds that Plaintiff has failed to direct the Court to evidence showing that any of the individual defendants were her "supervisor" for purposes of vicarious liability under Title VII.  Specifically, Plaintiff has failed to proffer evidence showing that Cancienne, Detillier, Folse, Louque, Steib, or Robichaux were empowered by St. James Parish School Board to take "tangible employment actions"

---

[106] R. Doc. 203-12.
[107] R. Doc. 204 at p. 1.
[108] *Id*. at pp. 1-3.
[109] *Id*. at pp. 3-4.

against her, including the ability to hire, fire, refuse to promote, or reassign Plaintiff with significantly different responsibilities, or to make a decision causing a significant change in Plaintiff's benefits.[110]   Defendants, on the other hand, have directed the Court to evidence showing that Robichaux had a role in determining school assignments for Pupil Appraisal board members, as well as their home school assignments,[111] that she was Plaintiff's direct supervisor from March 2015 until December 2019, and that her duties included "coordination of pupil appraisal and child search activities, including developing and maintaining effective pupil appraisal testing procedures and managing the day-to-day operations of the Pupil Appraisal Team."[112] Defendants have also proffered evidence showing that Steib, as the director of special education, was responsible for Plaintiff's evaluations and for approving changes in school assignments for the Pupil Appraisal team.[113]   There is no evidence before the Court showing that Plaintiff's school assignments were a "reassignment with significant different responsibilities" to constitute a tangible employment action. At best, the evidence shows that Steib and Robichaux had some leadership responsibilities in the special education department, but the Fifth Circuit, relying on the Supreme Court's decision in *Vance v. Ball State Univ.*,[114] has indicated that such responsibilities, including leadership responsibilities and an indirect right to cause a

---

[110] *Vance v. Ball State University*, 570 U.S. 421, 450, 133 S.Ct. 2434, 2454, 186 L.Ed.2d 565 (2013); *Spencer v. Schmidt Elec. Co.*, 576 Fed.Appx. 442, 447 (5th Cir. 2014) (quoting *Vance*, 133 S.Ct. at 2439).
[111] R. Doc. 112-9 at pp. 5-6.
[112] R. Doc. 112-14 at ¶¶ 1-3.
[113] R. Doc. 112-6 at pp. 15, 20, 22, 24, & 29; R. Doc. 112-7 at p. 3.
[114] 570 U.S. 421, 450, 133 S.Ct. 2434, 2454, 186 L.Ed.2d 565 (2013).

tangible employment action, do not necessarily make an employee a Title VII supervisor.[115]

The Court acknowledges that there is evidence before the Court that Steib was "on the interview committee" when Plaintiff was hired in 2015,[116] and that Steib was involved in the hiring process "in conjunction with our HR director."[117]  However, Plaintiff has not directed the Court to evidence indicating that Steib had the ability to hire or fire employees on behalf of St. James Parish School Board.  According to the evidence submitted and relied upon by Plaintiff, Cancienne is "at the top" of the chain of command and Steib is "over special education."[118]  Plaintiff has also submitted evidence to show that Steib and Detillier have authority over special education procedures.[119]  The remainder of the evidence cited by Plaintiff does not provide information regarding Steib's job duties, or whether she was empowered by St. James Parish School Board to take any tangible employment actions over Plaintiff.[120]  As such, Plaintiff has failed to raise a genuine issue of material fact regarding whether Steib or Robichaux were Title VII supervisors.

Defendants have also submitted evidence to show that Detillier is the administrative director of Pre-k through 12th grade content instruction for St. James Parish School Board, and that her job duties include "all curriculum and instruction

---

[115] *Morrow v. Kroger Limited Partnership I*, 681 Fed.Appx. 377, 380 (5th Cir. 2017).

[116] R. Doc. 112-6 at p. 5.

[117] R. Doc. 1126-7 at p. 10.  The Court notes that, in a footnote in their supplemental brief, Defendants assert that, "There is no indication as to who had the ultimate authority to make hiring decisions."  R. Doc. 204 at p. 2, n.7.

[118] R. Doc. 203 at p. 3, n.11 (*citing* R. Doc. 203-1 at p. 2).

[119] R. Doc. 203-4 at p. 11.

[120] *See*, R. Doc. 203 at p. 3, n.11.

. . . the teaching and learning," as well as special education.[121]   Plaintiff has not proffered any evidence showing that Detillier had the authority to take any tangible employment actions as to Plaintiff.   The evidence cited by Plaintiff references the chain of command at St. James Parish School Board, but does not provide information regarding Detillier's authority to make a significant change to Plaintiff's employment status.[122]   Thus, Plaintiff has failed to raise a genuine issue of material fact regarding whether Detillier was a Title VII supervisor.

As to Cancienne, Plaintiff has submitted some limited evidence that Cancienne can "make the appointments" to fill a vacancy with a school psychologist.[123] Defendants assert that the summary judgment evidence does not establish that Cancienne had authority to make ultimate hiring decisions, to fire, demote, or affect Plaintiff's pay or benefits.[124]   The Court agrees.   The Court, having the benefit of a more extensive deposition transcript for Cancienne, which Plaintiff submitted with her Opposition brief, finds that Cancienne indicated that hiring decisions involve communications between himself and the human resource director, followed by a recommendation to the executive committee of the St. James Parish School Board, and then approval by the St. James Parish School Board.[125]   The parties have not directed the Court to any other evidence indicating that Cancienne has the authority

---

[121] R. Doc. 112-7 at p. 2.
[122] R. Doc. 203 at p. 2, n.7.
[123] R. Doc. 203-1 at p. 3.   The Court has surmised that this unlabeled deposition transcript is the transcript of Cancienne based upon context clues therein.   *Id*. at pp. 2-3.   The Court also notes that the transcript reflects that the witness was cut off mid-sentence as he was continuing "And the board . . ." *Id*. at p. 3.
[124] R. Doc. 204 at p. 3.
[125] R. Doc. 126-4 at pp. 2-7, 9-10.

to make significant changes to Plaintiff's employment. The Court finds that Plaintiff's conclusory assertion and the scintilla of evidence cited in her supplemental brief[126] fail to raise a genuine issue of material fact regarding whether Cancienne was a Title VII supervisor.

Turning to Louque and Folse, the Court likewise finds that there is no evidence before the Court showing that they were empowered by St. James Parish School Board to take tangible employment actions. The evidence before the Court indicates that there was tension between the principals and members of the Pupil Appraisal team because principals were asking them to perform additional job duties.[127] The evidence cited by Plaintiff[128] fails to show that Louque or Folse had the authority to make a significant change in Plaintiff's employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.[129] Instead, the evidence shows that principals "were given authority to run their schools," but that they did not have a role in the special education department.[130] The evidence shows that principals were also responsible for ensuring that special education students "were getting the requirements of their IEP."[131] The Court finds that Plaintiff has failed to proffer any

---

[126] The Court notes that the remainder of the evidence cited by Plaintiff does not address whether Cancienne was empowered by St. James Parish School Board to take tangible employment actions. *See*, R. Doc. 203 at p. 2, n.3.

[127] R. Doc. 112-4 at pp. 15-16, 27; R. Doc. 112-6 at p. 14; R. Doc. 112-7 at pp. 7, 8, 9-10, 11.

[128] *See*, R. Doc. 203 at p.2, n.9 & p.3, n.13.

[129] *Spencer v. Schmidt Elec. Co.*, 576 Fed.Appx. 442, 447 (5th Cir. 2014) (quoting *Vance*, 133 S.Ct. at 2439).

[130] R. Doc. 203-4 at p. 13.

[131] *Id.*

evidence sufficient to raise a genuine issue of material fact regarding whether Folse or Louque are Title VII supervisors.

Because Plaintiff has failed to submit evidence showing that Cancienne, Detillier, Folse, Louque, Robichaux or Steib are supervisors for purposes of Title VII vicarious liability, Plaintiff will not be able to satisfy an essential element of her Title VII vicarious liability claims against St. James Parish School Board. The Court therefore finds that Defendants are entitled to summary judgment on Plaintiff's Title VII claims for retaliation, discrimination, and harassment asserted against St. James Parish School Board in Counts 1, 2, and 3 of the Second Amended Complaint.

### E. Count 2: Plaintiff's Discrimination Claim Against St. James Parish School Board Under Louisiana's Employment Discrimination Law, La. R.S. 23:301.

Like the original Complaint, although not specifically mentioned in the substance of Count 2 of the Second Amended Complaint, the heading of Count 2 indicates that Plaintiff is asserting a claim against St. James Parish School Board based upon an alleged violation of the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301.[132] As the Court previously explained, "The LEDL – which prohibits an employer from discriminating against an individual based on his race, color, religion, sex, age or national origin – is similar in scope to Title VII's prohibitions against discrimination."[133] As such, "Federal courts look to Title VII

---

[132] R. Doc. 104 at p. 18.
[133] R. Doc. 95 at pp. 36-37 (quoting *Harrell v. Orkin, LLC*, 876 F. Supp. 2d 695, 701 (E.D. La. 2012)) (internal quotation marks omitted).

jurisprudence to interpret the LEDL."[134]  Here, Defendants assert that Plaintiff cannot establish any reprisal under the LEDL, or the required causal connection, and that the claim should be dismissed because Plaintiff cannot establish a materially adverse action or a constructive discharge.[135]

Although not addressed by the parties, Plaintiff seeks to hold St. James Parish School Board vicariously liable under the LEDL for the actions of Cancienne, Detillier, Folse, Robichaux, and Louque on the same basis as Plaintiff's Title VII claims.  Thus, for the same reasons set forth above with respect to Plaintiff's Title VII claims, the Court finds that Defendants are entitled to summary judgment as to Plaintiff's claim against St. James Parish School Board under the LEDL, La. R.S. 23:301, *et seq.*

### F.  Count 4: Plaintiff's "Section 1983 Retaliation" Claim.

#### 1.  *Plaintiff's 42 U.S.C. § 1983 Claim Against the Individual Defendants.*

In Count 4 of the Second Amended Complaint, labeled "Count 4 Section 1983 Retaliation," Plaintiff makes three allegations: (1) that she was a public employee; (2) that she engaged in protected activity when she reported the illegal activity; and (3) that "Defendant harassed, verbally assaulted her, gave her poor performance reviews, had all her colleagues and coworkers call her name [sic] and say she had mental problems, given menial work, and eventually constructively discharged her

---

[134] R. Doc. 95 at p. 37 (*quoting Harrell*, 876 F. Supp. 2d at 701) (internal quotation marks omitted); *See, DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).
[135] R. Doc. 112-3 at p. 37.

because she engaged in protected activity."[136]  Although Plaintiff seemed to assert this claim against all of the defendants in her original Complaint,[137] it is not clear to the Court the identity of the singular "Defendant" referenced in Count 4.  Based on the prior Complaint, however, the Court will construe this as a typographical error and an intended reference to all of the named defendants.

The Court also surmises that "the illegal activity" alleged in Count 4 refers to "the illegal activity list" in Paragraph 6 of the Second Amended Complaint, which includes the following: changing student evaluations, illegally falsifying official documents, discriminating against minorities and special education students, destroying test protocols and student folders, failing to provide special education services and refusing to provide other needed services, allowing school principals to unilaterally make the decisions of what special education services the students were receiving and which students would qualify for those services, changing students' Individualized Education Plans without parental participation or knowledge, backdating official documents, discriminating against African-American special education students by imposing harsher disciplinary consequences upon them, segregating students by race and status through school scheduling, failing to appropriately evaluate African-American students for gifted services, and changing evaluations "to change the trajectory of children's lives to fit the nonscientific

---

[136] R. Doc. 104 at p. 19.
[137] R. Doc. 1 at p. 10.

evaluation of principal [sic] and make evaluation due to political connection and who parents are and not the abilities of the child."[138]

To establish a *prima facie* case for First Amendment retaliation under § 1983, a public employee must show that:

> (1) He suffered an adverse employment action;
> (2) He spoke as a citizen, rather than pursuant to his official job duties;
> (3) He spoke on a matter of public concern;
> (4) His interest in the speech outweighed the government's interest in the efficient provision of public services; and
> (5) His speech precipitated the adverse employment action.[139]

While Defendants do not explicitly address these factors in their Motion, they appear to argue that Plaintiff cannot establish the first, second, or fifth elements set forth above.[140]  Specifically, Defendants seem to assert that Plaintiff cannot show that any of the individual defendants are responsible for any alleged adverse employment action against her, that Plaintiff engaged in protected speech by reporting the illegal activity, or that her protected speech was the motivating factor behind the adverse employment action.[141]  Although somewhat disjointed, Plaintiff seems to argue that she can satisfy all five of the foregoing elements.[142]  The Court will address each element in turn.

---

[138] R. Doc. 104 at pp. 4-5.
[139] *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).
[140] R. Doc. 112-3 at pp. 26-29.
[141] *Id.* at pp. 26-29.
[142] R. Doc. 126 at pp. 12-16.

a.  <u>The First Element – Adverse Employment Action</u>

Defendants assert that adverse employment actions are "discharges, refusals to promote and reprimands," and that, "Decisions concerning work assignments, pay increases, administrative matters and departmental procedures, while important to the employee, do not rise to the level of constitutional deprivation."[143]  Defendants contend that Plaintiff's allegations of retaliation in Count 4 are insufficient to establish an adverse employment action by any individual defendant.[144]  Regarding her § 1983 claim, Plaintiff "incorporates by reference the allegation of adverse employment [sic] in the Title VII discrimination case, with emphasis on menial work."[145]  While Plaintiff does not provide citations to those prior arguments, the Court surmises that Plaintiff is referring to her allegations that she was constructively discharged, suffered a reduction in job responsibilities, was overloaded with work, formally and informally reprimanded and berated, compared to a less qualified person which was "demeaning," forced to take direction from a principal on how to conduct an evaluation, constantly asked to break the law, and denied a stipend.[146]

The Fifth Circuit has held that, "Employer actions that can result in liability include more than just actual or constructive discharge from employment.  Adverse employment actions can include discharges, demotions, refusals to hire, refusals to

---

[143] R. Doc. 112-3 at p. 28 & n.115 (quoting *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000)).
[144] R. Doc. 112-3 at pp. 28-29.
[145] R. Doc. 126 at p. 15.
[146] *Id*. at pp. 6-9.

promote, and reprimands."[147]  Plaintiff's list of adverse employment actions include a reduction in job responsibilities, being overloaded with work, formally and informally reprimanded and berated, compared to a less qualified person which was "demeaning," forced to take direction from a principal on how to conduct an evaluation, constantly asked to break the law, and denied a stipend.  Plaintiff further alleges constructive discharge as an adverse employment action.  According to the Fifth Circuit, "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."[148]  This is an objective test and a plaintiff must "demonstrate that a reasonable person in his shoes would have felt compelled to resign under the circumstances."[149]  As such, "The Court must look to the individual facts of each case without regard to the employee's subjective state of mind."[150]  "Mere harassment, alone, is insufficient; rather, the plaintiff must show aggravating factors to justify departure."[151]  To determine whether a reasonable employee would have felt compelled to resign, this Court considers the following relevant factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer

---

[147] *Sharp v. City of Houston*, 164 F.3d 93, 933 (5th Cir. 1999) (citing authority).

[148] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (quotation and internal quotation marks omitted).

[149] *Harrell v. Orkin, LLC*, 876 F. Supp. 2d 695, 707 (E.D. La. 2012) (citing authority).

[150] *Id.* (citing *Easterling v. Sch. Bd. Of Concordia Parish*, 196 Fed.Appx. 251, 253 (5th Cir. 2006); *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994)).

[151] *Harrell*, 876 F. Supp. 2d at 707 (quoting *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004)) (internal quotation marks omitted).

calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.[152]

Pretermitting Plaintiff's other allegations of adverse employment actions, Plaintiff clearly alleges that she suffered adverse employment actions, including that she was constructively discharged, as a result of the harassment she suffered at the hands of her supervisors, the individual defendants.[153]  Plaintiff also alleges that this harassment, and the constructive discharge, occurred as a result of her reporting "the illegal activity."[154]  Defendants fail to address the instances of allegedly harassing conduct that Plaintiff claims drove her to resign in their discussion of Plaintiff's § 1983 claim.  Instead, Defendants assert that, "the actions claimed by plaintiff are not sufficient to constitute adverse employment action against any Individual Defendant or SJPSB (see discussion below) for purposes of her First Amendment Retaliation claim."[155]  Defendants' subsequent discussion regarding the individual defendants addresses only the causation element of Plaintiff's § 1983 claim.[156]  Thus, Defendants have failed to carry their burden of showing that there is insufficient evidence to support Plaintiff's allegation that she suffered an adverse employment action, namely, that she was constructively discharged, as a result of the actions of the individual defendants.

---

[152] *McCoy*, 492 F.3d at 557 (citation omitted).
[153] R. Doc. 104 at p. 19; *See, Id*. at p. 5, ¶¶ 8-9; p. 8, ¶ 27; p. 9, ¶¶ 33-34.
[154] *Id*. at pp. 3-7, 19.
[155] R. Doc. 112-3 at pp. 28-29.
[156] *Id*. at p. 29.

Moreover, in the context of her Title VII claims, Defendants address Plaintiff's claim regarding constructive discharge, and assert that Plaintiff cannot establish badgering, harassment, or humiliation calculated to encourage her to resign because her conflicts with co-workers "were because of Cubas' stance on special education issues and because she was difficult to get along with, not because she was black or female."[157]  The Court finds that Plaintiff has raised a genuine issue of fact regarding whether she was constructively discharged as a result of the alleged harassment she suffered.  Plaintiff contends that she was harassed and labeled a troublemaker and a roadblock by Robichaux, Steib, Detillier, and Folse "due to her complaints of illegal and immoral activity,"[158] that after complaining about illegal activity her requests for assistance were ignored by her supervisors, which made it difficult to complete her work,[159] that Cancienne belittled, screamed at, and berated Plaintiff in front of her coworkers at the August 20, 2019 meeting,[160] and that Folse made false accusations about her job performance, questioned her work, spread lies and rumors about Plaintiff, and made Plaintiff's job more difficult after the August 20, 2019 meeting.[161] Plaintiff has also proffered evidence to substantiate these claims.[162]  Whether these actions were so intolerable that a reasonable employee in Plaintiff's shoes would have

---

[157] R. Doc. 112-3 at p. 24 (citing R. Doc. 112-6 at p. 11; R. Doc. 112-4 at p. 24; R. Doc. 112-15 at p. 11). The Court notes that Defendants cite page 112 of Cook's deposition (R. Doc. 112-4), but Defendants failed to attach page 112.  *See*, R. Doc. 112-4 at pp. 23-24.
[158] R. Doc. 104 at p. 5
[159] *Id*. at p. 8.
[160] *Id*. at p. 9.
[161] *Id*. at p. 10.
[162] R. Doc. 126-2 at pp. 16, 19, 30-31, 38-40, 45-46, 52-53; R. Doc. 126-3 at pp. 63, 79, 126-129.

felt compelled to resign is a disputed issue of material fact.[163]  Viewing the facts and drawing all inferences in the light most favorable to Plaintiff, the Court is compelled to conclude that the Second Amended Complaint plausibly establishes a constructive discharge claim.  Thus, analysis of the first element survives summary judgment.

### b.  The Second Element – Protected Speech

Defendants further assert that they are entitled to summary judgment on Plaintiff's § 1983 claim because Plaintiff cannot establish any protected speech.[164] The Fifth Circuit has made clear that, "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement."[165]  *In Garcetti v. Ceballos,* the Supreme Court held that, "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.[166]  The Fifth Circuit has further clarified that, "Under *Garcetti,* we must shift our focus from the content of the speech to the role the speaker occupied when he said it."[167]  Complaints made by public employees "up the chain of command" at their workplace about job duties normally fall outside of First Amendment protection.[168]

---

[163] *See, Lightell v. Walker*, 527 F. Supp. 3d 866, 889 (E.D. La. 2021) (citing *Swear v. Lawson*, 288 F. Supp. 3d 669, 695-96 (E.D. La. 2018)).
[164] R. Doc. 112-3 at pp. 26-27.
[165] *Goudeau v. East Baton Rouge Parish School Bd.*, 540 Fed.Appx. 429, 434 (5th Cir. 2013) (quoting *Charles v. Grief*, 522 F.3d 508, 514 (5th Cir. 2008)) (internal quotation marks omitted).
[166] 547 U.S. 410, 421, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006).
[167] *Williams v. Dallas Independent School Dist.,* 480 F.3d 689, 692 (5th Cir. 2007).
[168] *Davis v. McKinney*, 518 F.3d 304, 313 & n.3 (5th Cir. 2008) (citing authority).

Here, Plaintiff alleges that she complained of illegal activity to her supervisors, Louque, Folse, Robichaux, Detillier, Steib, Cook, and Cancienne, "continuously through her employment,"[169] but nothing was done and she was labeled "a troublemaker and a roadblock,"[170] and asserts that, "the harassment, complaints about her job performance, retaliation and treatment by supervisors got worse."[171] Plaintiff, however, concedes that she "went up her chain of command reporting illegal activities taking place within the school district."[172]  As such, the Court finds that Plaintiff was acting in her official duty as a school psychologist and merely reporting job concerns "up the chain of command" at her workplace.  The Fifth Circuit has made clear that such complaints fall outside the scope of First Amendment protection.[173]

The Court recognizes, however, that Plaintiff has also alleged that she complained of the illegal activity to outside agencies, including the Louisiana Department of Education, the National Association of School Psychologists, the United States Department of Education, and the United States Department of Justice during the school years of 2017-2018, 2018-2019, and the late part of 2019,[174] and to parents of certain students.[175]  Defendants do not argue that these external complaints are not protected speech.  Instead, Defendants explicitly acknowledge that, "external complaints may be considered protected speech" unless the complaints

---

[169] R. Doc. 104 at pp. 3, 4-5, & 6.
[170] *Id*. at pp. 5, 7
[171] *Id*. at p. 7.
[172] *Id*. at p. 6.
[173] *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (citing *Davis v. McKinney*, 518 F.3d 304, 313 & n.3 (5th Cir. 2008) (citing authority)).
[174] R. Doc. 104 at p. 6.
[175] *Id*. at p. 20.

were unknown to the employer.[176]   While Defendants seem to insinuate that Plaintiff's external complaints, to both agencies and parents, may not be protected because Plaintiff could not recall specific information regarding those complaints during her deposition, and further that some of those complaints may have been made anonymously, and some only following Plaintiff's resignation, Defendants focus their argument on the causation issue, and whether Plaintiff can establish a causal link between her protected speech and the adverse employment action.[177]   Because Defendants have not argued that Plaintiff's external complaints do not constitute protected speech, for the purpose of this Motion, the Court will assume that Plaintiff's complaints to these external entities outside the workplace chain of command constitutes protected speech.  Viewing Plaintiff's allegations regarding the external complaints made in a light most favorable to Plaintiff, the Court finds the speech clearly involved a matter of public concern – allegations of the violation of special education laws in St. James Parish schools.

### c.   The Fifth Element – Causation

Defendants dedicate a majority of their § 1983 arguments to Plaintiff's inability to establish a causal link between her alleged protected speech and the alleged adverse employment actions.[178]  Defendants contend that Plaintiff's external complaints cannot form the causal basis for an alleged retaliation claim because her employer, the St. James Parish School Board, was unaware of the external

---

[176] R. Doc. 112-3 at p. 27.

[177] *Id*. at pp. 26-27.

[178] *Id*. at pp. 27-28, 28, & 29.

complaints made to outside agencies.[179]   Defendants further assert that Plaintiff actively concealed from the St. James Parish School Board that she was making those outside reports.[180]   Defendants point out that Plaintiff links the majority of her alleged increased workload to an August 20, 2019 work meeting during which she had a disagreement with Cancienne, and not to any purported anonymous or other reporting to outside agencies.[181]   In response, Plaintiff retorts that, "whether the [outside agency] calls were anonymous or not is irrelevant."[182]   Plaintiff asserts that it is sufficient to allege that Defendants knew or suspected that she was making external complaints and retaliated against her based upon those complaints.[183]   In response to the question at her deposition, "Did you tell anyone you had reported it to the State Department of Education," Plaintiff testified, "I didn't specifically tell anyone that I reported any of these things,"[184] and further stated, "I didn't specifically tell them that I had contacted the State Department of Education, but there were numerous assumptions because it had come up.   Even in other meetings it was said that, you know, she's calling the state department on us and she's, you know—but I didn't specifically, if that's what you're asking me.   I didn't specifically."[185]   Plaintiff also testified that she did not tell anyone at the St. James Parish School Board that she had spoken to anyone at the Department of Justice, testifying, "No, I didn't tell

---

[179] R. Doc. 112-3 at pp. 27-28 (citing *United States ex rel. Patton v. Shaw Services, LLC*, 418 Fed.Appx. 366 (5th Cir. 2011); *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001)).
[180] R. Doc. 112-3 at p. 28.
[181] *Id*. (*citing* R. Doc. 112-16 at p. 56).
[182] R. Doc. 112 at p. 12.
[183] R. Doc. 126 at p. 12 (*citing* R. Doc. 126, pp. 126 -34; R. Doc. 126-6, Exhibit 7, Cubas Affidavit, at ¶¶ 27-31 and Exhibit F to Exhibit 7, page Bates labeled "Cubasaff000446").
[184] R. Doc. 112-16 at p. 53-54.
[185] *Id*. at p. 189.

anyone."[186]  She also denied even threatening to make any outside agency report to
the School Board.[187]   Plaintiff further asserts that, "Defendants knew and thought
Plaintiff had made outside complaints.   It was documented in meeting notes."[188]
Plaintiff further asserts that she told several parents that their children's rights were
being violated "which resulted in them acting."[189]

> In her Opposition brief, Plaintiff asserts that:

> Everyone in the school district thought that LaTasha was making
> complaints to outside agencies.   So much so that it is documented.
> LaTasha even warned that she would go to an outside agency if the
> illegal activity did not stop.   She did, and I am 100% sure they thought
> and knew she did.   That is why they discussed it.   Plaintiff also stated
> that she told Kelly Cook that she had gone to several government
> agencies.[190]

The Court finds that Plaintiff has failed to direct the Court to evidence showing
that any of the individual defendants were aware of her reports of illegal activity to
external agencies or to students' parents prior to her resignation.   Moreover, and
importantly, Plaintiff cites her own deposition testimony, in which she stated, "I
didn't specifically tell anyone that I reported any of these things."[191]   As noted above,
Plaintiff repeatedly testified that she did not tell Cancienne, or anyone else at the St.
James Parish School Board, that she had contacted the Louisiana Department of

---

[186] *Id*. at p. 191.
[187] *Id*.
[188] R. Doc. 126 at p. 13 (*citing* R. Doc. 126-6, Exhibit F to Exhibit 7, Cubas Affidavit, at the page Bates labeled "Cubasaff000446").
[189] R. Doc. 126 at p. 14.
[190] *Id*. at p. 15 (*citing* R. Doc. 126-1 at pp. 31-33, 147, 52, 55, & 56; R. Doc. 126-3 at pp. 73-77; R. Doc. 126-6, Exhibits F & G to Exhibit 7, pages Bates labeled as "Cubasaff000436-Cubasaff000446" and "Cubasaff000437-Cubasaff000548".   The Court notes that Plaintiff also cites to page 290 of her deposition transcript, which was not included in R. Doc. 126-1.
[191] R. Doc. 126 at p. 12, n. 86 (*citing* R. Doc. 126-1 at pp. 31-32).

Education[192] or the Department of Justice,[193] nor did she ever threaten to call either agency.[194]  Although Plaintiff testified that Steib and Cook "were aware that I was talking to people and that reports were being made,"[195] at no point does Plaintiff cite to their deposition testimony to support her assertion.  Moreover, the Court has reviewed Steib and Cook's deposition transcripts provided by Plaintiff, and neither Steib nor Cook were ever asked about Plaintiff's reports to outside agencies or to parents.[196]  While all reasonable inferences must be drawn in favor of Plaintiff, as the non-moving party, she cannot defeat summary judgment with her unsubstantiated assertions[197] that the individual defendants knew about the external reports because "they were all aware that if any type of investigations were done, that I would be open to providing the information."[198]

Based on the foregoing, the Court finds that Plaintiff has failed to show that there is a genuine issue of material fact precluding summary judgment on her § 1983 First Amendment retaliation claim against the individual defendants.  Specifically, Plaintiff has failed to provide evidence showing that any of the individual defendants

---

[192] R. Doc. 126-1 at pp. 148.

[193] *Id*. at p. 150.

[194] *Id*.

[195] *Id*. at p. 32.

[196] *See, generally,* R. Docs. 126-2 & 126-3.

[197] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[198] R. Doc. 126-1 at pp. 32 & 148.  The Court further notes that the "meeting notes" cited by Plaintiff indicate that she told her supervisors that she would *not* report work issues to outside agencies, such as the Louisiana Ethics Board or the Louisiana Licensing Board, and that, "if something is wrong with anyone's work . . . she would approach him or her as such, so it can be fixed.  She also stated that she hopes that the team would do the same to her."  R. Doc. 126-6, Exhibit F to Exhibit 7, page Bates labeled as "Cubasaff000446."  The Court also notes that Plaintiff's counsel reviewed these meeting notes with Steib during her deposition.  R. Doc. 126-3 at p. 74.

were aware of her external complaints prior to her resignation.   Without that evidence, Plaintiff will not be able to show that these external complaints were the moving force behind the alleged adverse employment actions taken against her by the individual defendants, as required to make out a prima facie case for § 1983 First Amendment retaliation.[199]   Defendants are, therefore, entitled to summary judgment on Plaintiff's § 1983 First Amendment retaliation claim asserted against the individual defendants.

2.   *Plaintiff's § 1983 Claim Against St. James Parish School Board.*

Although not a model of clarity, Plaintiff seems to assert a claim against St. James Parish School Board for retaliation under 42 U.S.C. § 1983 based upon its alleged policy, practice, and custom of engaging in illegal activity "outlined in the facts section of this Complaint," which was the "main force behind the practices outlined in the fact section of Complaint."[200]   Plaintiff also asserts that the illegal activity was carried out by Cancienne with the instruction of, or blind indifference by, the St. James Parish School Board.[201]   Plaintiff alleges, "the facts alleged this [sic] complaint had been going on for over 4 years with several complaints and thus became the custom of the Saint James Parish School Board."[202]   Plaintiff asserts that she followed St. James Parish School Board's reporting policy by complaining of these activities to her supervisors, Robichaux, Steib, Detillier, Cook, and Cancienne, but

---

[199] The Court, therefore, does not reach the issue of qualified immunity, which is referenced in passing in Defendants' Motion.  R. Doc. 112-3 at p. 29 ("All individuals are entitled to qualified immunity.").
[200] R. Doc. 104 at p. 19.
[201] *Id*. at p. 19-20.
[202] *Id*. at p. 20.

that no remedial action was taken.[203]  Plaintiff also asserts that she "complained" to outside agencies, including the National Association of School Psychologists, the Louisiana Department of Education, the United States Department of Education, and the United States Department of Justice, as well as to parents and children advocates.[204]

In the Motion for Judgment on the Pleadings and/or Motion for Summary Judgment, Defendants assert that the official policy or custom at issue in a § 1983 First Amendment retaliation claim must target the right that was allegedly violated, *i.e.* Plaintiff's right to engage in protected speech free from retaliation.[205]  Defendants argue that the policy or custom alleged by Plaintiff relates to St. James Parish School Board's administration of the special education programs, specifically the practice of allowing principals to override evaluations.[206]  Defendants contend that the correct inquiry is whether there is evidence of a policy or custom regarding retaliation against an employee for the exercise of free speech rights.  Defendants assert that there is no such evidence.

Plaintiff asserts in her Opposition brief that she is claiming that St. James Parish School Board had a policy or custom of: (1) violating special education laws; and (2) harassing individuals, including Plaintiff, Steib, and Amy Hayes, "until they quit if they spoke up, internally and externally, about violating special education laws

---

[203] *Id.*
[204] *Id.*
[205] R. Doc. 112-3 at p. 29 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984); *Goudeau v. East Baton Rouge Parish School Bd.*, 540 Fed.Appx. 429, 438 (5th Cir. 2013)).
[206] R. Doc. 112-3 at pp. 29-30.

or harassing individuals until they agreed to violate special education laws.  There is ample evidence of this."[207]   In support of this assertion, Plaintiff cites to the 26 recorded conversations she took surreptitiously, as well as the text messages and meeting notes attached as exhibits to her Affidavit.  Elsewhere in her Opposition brief, Plaintiff asserts that St. James Parish School Board had a policy or custom "of discriminating against African American women who spoke out against illegal activities occurring in the special education program."[208]

The Fifth Circuit has held that, "Under § 1983, a municipality or local governmental entity such as an independent school district may be held liable only for acts for which it is actually responsible."[209]  To establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy."[210]   Thus, a plaintiff must identify: (1) an official policy or custom; (2) of which a policymaker can be charged with actual or constructive knowledge; and (3) a constitutional violation whose moving force is that policy or custom.[211]

The Court finds that Plaintiff's allegations against St. James Parish School Board in Count 4 of the Second Amended Complaint are not only vague and conclusory, but appear to concern St. James Parish School Board's policies regarding

---

[207] R. Doc. 126 at p. 13 (*citing* R. Docs. 126-6).
[208] R. Doc. 126 at p. 18 (citations omitted).
[209] *Goudeau v. East Baton Rouge Parish School Bd.*, 540 Fed.Appx. 429, 437-38 (5th Cir. 2013) (quoting *Doe ex rel. Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir. 1998)) (internal quotation marks omitted).
[210] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).
[211] *Valle*, 613 F.3d at 542 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

the administration of its special education programs, *not* a policy of retaliating against employees for exercising their free speech rights.   While the Court has construed Count 4 as a First Amendment retaliation claim under 42 U.S.C. § 1983, Plaintiff makes no reference to the First Amendment, or any other constitutional right, that St. James Parish School Board allegedly violated.   Instead, Plaintiff's allegations concern the alleged unlawful practices that were taking place in the special education department.   The Court therefore agrees with Defendants that Plaintiff "misapprehend[s] the nature of the official policy or custom"[212] that she was required to allege.   As explained by the Fifth Circuit in a factually similar case, "In order to establish the School Board's liability based on an adverse employment decision in response to her protected speech, Goudeau needed to demonstrate a policy or custom targeting the right that was violated (i.e., the right to engage in protected speech free from retaliation), rather than a policy concerning conduct about which she spoke (i.e., the changing of students' grades)."[213]

Here, Plaintiff alleges that St. James Parish School Board had a policy or custom of violating special education laws and that Cancienne informed her that he "was in talks with the Saint James Parish School Board that would change the currently illegal policy to legal in Saint James Parish allowing principals to override evaluations would eventually be the policy."[214]   Plaintiff then asserts that Cook informed her that "she would speak to them and nothing was again done, and the

---

[212] *Goudeau v. East Baton Rouge Parish School Bd.*, 540 Fed.Appx. 429, 438 (5th Cir. 2013).
[213] *Goudeau*, 540 Fed.Appx at 438 (citing authority).
[214] R. Doc. 104 at p. 20.

illegal activity, harassment, and intimidation got worse for Plaintiff."[215]  Plaintiff alleges that she also "complained" to outside entities, including the United States Department of Education.[216]  Plaintiff appears to elaborate on these claims in her Opposition brief by asserting that, "each Defendant who testified on behalf of SJPSB . . . consistently said that they thought the reason Plaintiff was being harassed, demeaned, and forced to resign was because of her stance against the illegal activity of special education."[217]  All of Plaintiff's allegations reinforce the Court's determination that Plaintiff has failed to allege facts showing that St. James Parish School Board had a policy or custom of retaliating against its employees who exercise their First Amendment rights.

To the extent Plaintiff asserts, for the first time in her Opposition brief, that St. James Parish School Board had a policy or custom of discriminating against African-American women who spoke out against illegal activities in the special education program,[218] the evidence cited by Plaintiff doesn't support this assertion. Cook and Steib both testified during their depositions that they believed Plaintiff's decisions were questioned by co-workers, and that Plaintiff felt attacked, due to her stance regarding the special education department, not because of her race.[219]  Steib also testified that her negative interactions with Cancienne were "political," and had nothing to do with her race.[220]  Steib also testified that some of Plaintiff's exchanges

---

[215] *Id.*
[216] *Id.*
[217] R. Doc. 126 at p. 16 (citations omitted).
[218] *Id.* at pp. 13 & 18.
[219] *See*, R. Doc. 126 at p. 18, n.129; R. Doc. 126-2 at pp. 16-19; R. Doc. 126-3 at pp. 47, 109-110.
[220] R. Doc. 126-3 at pp. 108-110.

with Cancienne were geared toward Steib, and were "more political than anything."[221]

The record before the Court is devoid of any evidence, beyond Plaintiff's deposition testimony and Affidavit,[222] that St. James Parish School Board had any policy or custom directed at curtailing the First Amendment rights of its employees who speak out about illegal practices in the special education department. Thus, even accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to raise a genuine issue of material fact regarding whether St. James Parish School Board had a policy or custom of retaliating against its employees for exercising their First Amendment rights. As such, St. James Parish School Board is entitled to summary judgment on Plaintiff's § 1983 First Amendment Retaliation claim.

### G. Count 5: Plaintiff's Defamation Claim.

In Count 5 of the Complaint, Plaintiff alleges that Cancienne, Cook, Detillier, Steib, Robichaux, Folse, Louque, and St. James Parish School Board "made statements pursuant to a conspiracy."[223] Although unclear, Plaintiff seems to assert that Cancienne made a defamatory statement on August 20, 2019, but does not offer any information regarding the alleged statement.[224] Plaintiff also seems to assert that Detillier and Folse made defamatory statements when they said that, "Plaintiff did not care about special education children," but Plaintiff only specifies a date for

---

[221] R. Doc. 126-3 at pp. 107, 111-112, 114.
[222] R.Docs. 126-1 & 126-6.
[223] R. Doc. 104 at p. 20.
[224] *Id.*

Detillier's statement (October 15, 2019).[225]  The Second Amended Complaint is silent as to any specific allegation of defamation by the other individual defendants. Plaintiff further alleges that defamatory statements regarding her job performance and her reputation, including that she was a "troublemaker" and a "roadblock," were made in the course and scope of her employment, but does not specify who made the statements.[226]  As in her original Complaint, Plaintiff alleges that, "Defendants publicized these unprivileged comments to Plaintiff's coworkers and supervisors," and that "Defendants" were negligent in publicizing the comments, "if not intentional."[227]

Defendants assert that the comments complained of, even when viewed together, are not sufficient to expose Plaintiff to "contempt, ridicule of [sic] hatred," as required to support a claim for defamation.[228]  Defendants argue that, viewing the statements separately as to each individual defendant, the statements alleged are not defamatory, Plaintiff cannot establish an unprivileged publication, and that a qualified privilege applies.[229]  Defendants further assert that if Plaintiff can establish vicarious liability for the remarks of any of the individual defendants, or by them collectively, "there is no valid basis for defamation."[230]  In response, Plaintiff asserts that she can "meet all the elements to prove defamation and conspiracy to commit defamation," and asserts that Cancienne, Folse, and Detillier made defamatory

---

[225] *Id*. at pp. 20-21.
[226] *Id*. at p. 21.
[227] *Id*.  *See*, R. Doc. 1 at p. 11.
[228] R. Doc. 112-3 at p. 38 (citing *Garrett v. Kneass*, 482 So.2d 876 (La. App. 2 Cir. 1986)).
[229] R. Doc. 112-3 at p. 38 (citations omitted).
[230] *Id*. (citing *Brackens v. Stericycle*, 829 Fed.Appx. 17, 22-23 (5th Cir. 2020)).

statements.[231]  Plaintiff claims that Cancienne stated in August 2019 that, "Plaintiff was not putting children in self-containment when they were supposed to be," and that Cancienne "knew that the children were not supposed to be in self-containment and was only doing what Hollie Folse wanted him to do which caused everyone in district [sic] to feel as if they could attack Plaintiff which ultimately led to constructive discharge."[232]  As to Folse, Plaintiff asserts the following:

> Hollie Folse – made a false statement that [Plaintiff] did not want to open evaluation, to Vondra Steib, [sic] considering that Hollie was an individual who told Dr. Cancienne about [Plaintiff] malice can be implied, and [Plaintiff] got reprimanded/harassed by Carol in Human Resource [sic] and Vondra Steib and affected her performance evaluation and led to increased hostility and ultimately constructive discharge.[233]

Finally, Plaintiff asserts that Detillier called her a "roadblock" at Pupil Appraisal meetings, "which lead to increased hostility toward Plaintiff and ultimately constructive discharge."[234]

According to the Louisiana Supreme Court, "Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name."[235] "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[236]  Additionally, "The fault requirement is often set forth in the

---

[231] R. Doc. 126 at pp. 21-22.
[232] *Id.* (citations omitted).
[233] *Id.* at p. 22 (citations omitted).
[234] *Id.*
[235] *Costello v. Hardy*, 2003-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139 (citations omitted).
[236] *Costello*, 2003-1146 at p.12, 864 So.2d at 139 (quoting *Trentecosta v. Beck,* 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559) (internal quotation marks omitted).

jurisprudence as malice, actual or implied."[237]   "Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages."[238]

Because Plaintiff has failed to assert any facts whatsoever to support a defamation claim against Cook, Steib, Robichaux, or Louque, in either the Second Amended Complaint or her Opposition brief, Defendants are entitled to summary on those claims.  The Court further finds that Plaintiff has failed to show that the statements made by Cancienne, Detillier, and Folse were false or defamatory in some way.  Additionally, Plaintiff has failed to assert any facts, or direct the Court to any evidence, to show that the comments made by Cancienne, Detillier, and Folse were publicized outside of internal work meetings, or that they were publicized to third parties.[239]  As explained by the Fifth Circuit, "In Louisiana, statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons for the purposes of a defamation claim."[240]  Such are the claims, however thin, made by Plaintiff.  Thus, Plaintiff has failed to show that she will be able to establish two essential elements of her defamation claim against Cancienne, Detillier, and Folse, and Defendants are entitled to summary judgment on those claims.

---

[237] *Costello,* 2003-1146 at p.12, 864 So.2d at 139 (citations omitted).

[238] *Id*. (quoting *Trentecosta*, 96-2388 at p.10, 703 So.2d at 559) (internal quotation marks omitted).

[239] The Court notes that the deposition testimony cited by Plaintiff does not support her arguments regarding the alleged defamatory statements.  *See*, R. Docs. 126-3 at pp. 29-31 & 123; 126-4 at pp. 14, 15, 17, & 21.

[240] *Brackens v. Stericycle, Inc.*, 829 Fed.Appx. 17, 23 (5th Cir. 2020) (quoting *Williams v. United Parcel Serv., Inc.*, 757 Fed.Appx. 342, 345 (5th Cir. 2018)) (internal quotation marks omitted).

To the extent Plaintiff has asserted a defamation claim against the St. James Parish School Board, there are no allegations linking any alleged defamatory statements to the St. James Parish School Board. Additionally, Plaintiff has not alleged vicarious liability in the context of this claim, nor has Plaintiff alleged any facts to show that there was a conspiracy between the individual defendants and the St. James Parish School Board to make defamatory statements against her. As such, Defendants are entitled to summary judgment on Plaintiff's defamation claim asserted against St. James Parish School Board in Count 5.

### H. Count 6: Plaintiff's Claim for Intentional Infliction of Emotional Distress.

In Count 6 of the Second Amended Complaint, Plaintiff asserts a claim for intentional infliction of emotional distress against "Defendants" on the basis that "Defendant's [sic] conduct was extreme and outrageous-Dr. Cancienne, Paul McDonald, Anne Detillier, Hollie Folse, Sabra Robichaux, Becky Louque all asked Plaintiff to violate special education laws and rules both state and federal for over 4 years (2015-2019)."[241] Plaintiff alleges that her "emotional distress was severe and required her to see a mental health professional and be placed on medication," and that, "Defendants desired to inflict severe emotional distress or substantially certain to result from conduct [sic]."[242] These allegations are nearly identical to the allegations in Plaintiff's original Complaint, which the Court determined were

---

[241] R. Doc. 104 at p. 21.
[242] *Id*.

conclusory and insufficient to state a plausible claim for intentional infliction of emotional distress under Louisiana Civil Code art. 2315.[243]

Defendants assert that they are entitled to summary judgment on this claim because none of the remarks at issue meet the extraordinary and outrageous conduct standard required for an intentional infliction of emotional distress claim.[244] Defendants then specify the comments made by each defendant, beginning with Cancienne, with whom Plaintiff allegedly had one heated, verbal exchange regarding a work-related issue where she challenged his authority.[245] Plaintiff claims Detillier did not provide her with assistance when requested and called Plaintiff a "roadblock" and "troublemaker" several times.[246] Defendants assert that Plaintiff claims that Robichaux ignored her complaints regarding special education compliance issues, refused to provide assistance with her workload, and cites one instance in 2018 when Robichaux "screamed at her."[247] According to Defendants, Plaintiff disagreed with Folse's handling of various student issues, claims Folse improperly increased her workload, and claims that Folse referred to her as a "roadblock."[248] Regarding Louque, Plaintiff claims she had one disagreement with Louque about a student in October 2018, and that Louque "yelled at her and got in her personal space."[249] Defendants assert that Plaintiff does not allege any specific remarks that can be

---

[243] R. Doc. 95 at p. 28 (*citing* R. Doc. 1 at pp. 11-12).
[244] R. Doc. 112-3 at pp. 37-38 (citing *Brackens v. Stericycle*, 829 Fed.Appx. 17, 22 (5th Cir. 2020)).
[245] R. Doc. 112-3 at p. 37 (*citing* R. Doc. 112-16 at pp. 24-25, 36-41).
[246] R. Doc. 112-3 at p. 37 (*citing* R. Doc. 112-16 at pp. 25, 26-27, 31, & 51).
[247] R. Doc. 112-3 at p. 37 (*citing* R. Doc. 112-16 at pp. 13-14, 50, & 56-59).
[248] R. Doc. 112-3 at p. 37 (*citing* R. Doc. 112-16 at pp. 25, 28-30).
[249] R. Doc. 112-3 at p. 37 (*citing* R. Doc. 112-16 at pp. 3-4, 32-33, & 47; R. Doc. 112-4 at pp. 13-14).

attributed to the St. James Parish School Board, even under a theory of vicarious liability.[250]

Plaintiff asserts that she can establish intentional infliction of emotional distress because, "When your manager/supervisor tells you at your resignation meeting that you have been constructively discharged that is incontrovertible evidence of intentional infliction of emotional distress.  This concrete evidence that you were deliberately and repeatedly harassed to get you to quit your job surely is also concrete evidence that Defendants intentionally inflicted emotional distress on Plaintiff."[251]  Plaintiff asserts that Cancienne testified during his deposition that people within the school district said that Plaintiff was hard to work with, and further claims that Folse "specifically sought out and recruited Dr. Cancienne to get [Plaintiff]."[252]  Plaintiff claims that, "The most damning evidence that the emotional distress was intentional was the constant asking of Plaintiff to break the law, Louisiana Special Education Bulletins."[253]  Plaintiff asserts that during her four years working for St. James Parish School Board, she was: screamed at, berated, forced to do menial work, denied a stipend, compared to a less qualified worker, ignored, not provided assistance, forced to work in hostile situations, forced to do other people's work, ostracized, received a reduction in pay, and received an increased workload, and that "All the Defendants participated in the abovementioned

---

[250] R. Doc. 112-3 at p. 37.
[251] R. Doc. 126 at p. 20 (*citing* R. Doc. 126-3 at p. 136; R. Doc. 126-2 at pp. 37-38).
[252] R. Doc. 126 at p. 20 (*citing* R. Doc. 126-4).
[253] R. Doc. 126 at pp. 20-21 (citations omitted).

activity."[254]  Plaintiff further asserts that St. James Parish School Board "is subject to vicarious liability under all the counts in this case."[255]

A claim for intentional infliction of emotional distress under Louisiana law is actionable only if the plaintiff can show: (1) that the defendant's conduct was extreme and outrageous; (2) that the plaintiff's emotional distress was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially likely to result from his conduct.[256]  According to the Louisiana Supreme Court, "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[257]  The Louisiana Supreme Court has further explained that:

> Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."[258]

Here, the Court maintains that the allegations in Count 6 of the Second Amended Complaint, as well as in Plaintiff's Opposition brief, are conclusory and fail to state a plausible claim for intentional infliction of emotional distress against any of the individual defendants or against St. James Parish School Board.  The Court

---

[254] R. Doc. 126 at p. 21 (*citing* R. Doc. 126-1; R. Doc. 126-3 at pp. 118-121 & 136; R. Doc. 126-6).

[255] R. Doc. 126 at p. 21 (citing *Dietz v. Dietz*, 2014-1164 (La. App. 3 Cir. 5/6/15), 165 So.3d 342).

[256] *McCoy v. City of Shreveport,* 492 F.3d 551, 563 (5th Cir. 2007) (quoting *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991)).

[257] *White*, 585 So.2d at 1209.

[258] *Id.* (citations omitted).

finds that the conduct complained of in the Opposition brief, albeit unprofessional, is more akin to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," which do not rise to the level of intentional infliction of emotional distress.[259]  As explained by the Fifth Circuit, "disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable."[260]  Further, "The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like."[261]  Plaintiff has failed to direct the Court to evidence showing that any of the Defendants intended to inflict severe emotional distress upon her through their alleged offensive conduct.

While Plaintiff relies heavily upon Steib's alleged statement that Plaintiff was constructively discharged as "incontrovertible evidence of intentional infliction of emotional distress," Steib's deposition transcript does not support Plaintiff's argument.  Interestingly, Plaintiff cites a portion of Steib's deposition transcript in which Steib merely confirmed that she used the term "constructive discharge" in "the recording that LaTasha resigned in," and then defined the phrase "constructive discharge" as meaning "that you were forced in sort of way [sic] to resign from a position in which you did not want to."[262]  This testimony does not shed any light on the intention of the individual defendants or whether they intended to inflict severe

---

[259] *Id.*
[260] *Id.* at 1210.
[261] *Id.*
[262] R. Doc. 126-3 at p. 136.

emotional distress upon Plaintiff, nor does it provide "incontrovertible evidence of intentional infliction of emotional distress."

Although Plaintiff alleges, generally, that "Defendants" asked Plaintiff to violate special education laws between 2015 and 2019, the Court will separately address the specific allegations made against each of the individual defendants in the Second Amended Complaint.

### i.   Cancienne

Plaintiff alleges that Cancienne told her "that he did not care about the law and that the district could not follow every little law, after the Plaintiff informed him and others that they were breaking laws."[263]  Plaintiff also alleges that during an August 20, 2019 work meeting, at which "22 other people were present," Cancienne "informed the Plaintiff that she could 'get on the boat or get off the boat' and that the principals would be making decisions regarding special education."[264]  Plaintiff alleges that when she "spoke up" and challenged Cancienne's directive during the meeting, he began to "belittle, scream, and berate the Plaintiff in front of everyone."[265] Plaintiff alleges that during that same meeting, Cancienne gave Folse the authority to unilaterally place students in a self-contained special education classroom and instructed Plaintiff to make her evaluations fit whatever Folse wanted.[266]  Plaintiff

---

[263] R. Doc. 104 at p. 8, ¶ 27.
[264] *Id*. at pp. 5-6.
[265] *Id*. at p. 6.
[266] *Id*. at p. 9, ¶ 35.

alleges that Cancienne "also talked to other people in the Saint James Parish School District about Plaintiff and how she was hard to work with."[267]

Plaintiff's allegations and the evidence cited in the Opposition brief fail to show that Plaintiff will be able to establish at trial that Cancienne engaged in "extreme and outrageous" conduct, as required to assert a plausible claim for intentional infliction of emotional distress.  Instead, Plaintiff's allegations constitute "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," that do not rise to the level of intentional infliction of emotional distress required under the law.[268]  Plaintiff also fails to allege facts or point to evidence suggesting that Cancienne intended to inflict severe emotional distress upon her, or that he could have foreseen that such distress would result.  Thus, even accepting all of Plaintiff's allegations as true, as this Court is bound to do, Defendants are entitled to summary judgment as to Plaintiff's claim for intentional infliction of emotional distress against Cancienne in his official and individual capacities.

ii.   Cook

Plaintiff alleges that she advised Cook of the illegal activity "continuously throughout her employment,"[269] that Cook told her that the stipend Plaintiff requested would be reduced because the district "did not want the black girl making more than the white psychologist," and that Cook told Plaintiff that, "no one cared about what she was saying because it was coming from a black person."[270]  Plaintiff

---

[267] Id. at p. 13, ¶ 65.
[268] White v. Monsanto, 585 So.2d 1205, 1209 (La. 1991).
[269] R. Doc. 104 at pp. 4-5, ¶ 7.
[270] Id. at p. 7, ¶¶ 22 & 23.

also alleges that Cook told her that Detillier was not concerned with helping Plaintiff or addressing Plaintiff's concerns "because she was one of them."[271]  The portion of Cook's deposition testimony submitted by Plaintiff does not support these allegations.[272]  Further, Cook testified that the stipend was discretionary and that even though Plaintiff met the requirements, she did not receive the stipend because the school district "had never paid any school psychologist the certification [stipend] . . . ."[273]

Plaintiff further alleges that after the August 20, 2019 work meeting, she complained to Cook about the illegal activity, the harassment by her supervisor, and "her retaliation," and that Cook told her "that she would investigate it and get back to her," and "met with Plaintiff several times."[274]  Plaintiff asserts that Cook subsequently informed her that she had verified Plaintiff's complaints "but did not want to take any remedial actions because it could open up a can of worms and there would be no turning back," and further informed Plaintiff that she "just needed to just deal with it."[275]  Plaintiff then alleges that Cook told her that "they were trying to get rid of her."[276]  Plaintiff further alleges that during a meeting held on October 15, 2019, she told her supervisors, including Cook, that she would not change special education evaluations or break the law, but that she "was told by her supervisors to just bend the law and to water herself down."[277]  Plaintiff asserts that on August 29,

---

[271] *Id*. at ¶ 23.
[272] *See, generally*, R. Doc. 126-2.
[273] R. Doc. 126-2 at pp. 20-21.
[274] R. Doc. 104 at pp. 9-10, ¶ 36.
[275] *Id*. at p. 10, ¶¶ 37 & 38.
[276] *Id*. at ¶ 40.
[277] *Id*. at ¶ 43.

2019, Cook told her not to let "them" run her out of the district, and that Cook stated on an October 4, 2019 recording "I do not know why they are targeting you; you are just trying to protect your license," which show that the Defendants' actions were intentional.[278]

Again, the evidence submitted by Plaintiff does not support these allegations. According to the portion of Cook's deposition transcript submitted by Plaintiff, Cook testified that she investigated Plaintiff's allegations of illegal activity in the special education program, and that she did not substantiate any of those claims.[279]  Cook also confirmed that she told Plaintiff to "not let them run her out of the district" and told Plaintiff to keep all of her documentation because she thought Plaintiff should keep her job and continue what she was doing, noting that, "there was a lot of tension on LaTasha's part because she just felt like she was being constantly treated unfairly."[280]  Cook further testified that Plaintiff "felt that she was being attacked because people didn't agree with her."[281]

The Court finds that Plaintiff's allegations and the evidence cited in the Opposition brief fail to show that Cook engaged in "extreme and outrageous" conduct, as required to establish a claim for intentional infliction of emotional distress.  As with Cancienne, Plaintiff also fails to allege facts or cite evidence indicating that Cook intended to inflict severe emotional distress upon her or that Cook could have foreseen that such distress would result.  Thus, accepting all of Plaintiff's claims as

---

[278] *Id.* at p. 12, ¶¶ 54 & 55.
[279] R. Doc. 126-2 at p. 11.
[280] *Id.* at p. 38.
[281] *Id.* at pp. 38-39.

true, Defendants are entitled to summary judgment as to Plaintiff's claim against Cook, in either in her official or individual capacity, for the intentional infliction of emotional distress.

### iii. Detillier, Steib, Robichaux, and Folse

In the Second Amended Complaint, Plaintiff alleges that Detillier, Steib, Folse and Robichaux were her direct supervisors, that she complained about illegal activity to them continuously throughout her employment, and that they continuously called Plaintiff a "troublemaker" and a "roadblock" throughout the 2018-2019 school year until she resigned in December 2019.[282] Plaintiff alleges that Steib told her that her concerns were not being addressed "because she was black."[283] Plaintiff alleges that Robichaux instructed her to throw away student assessment results without reporting them to parents and to fabricate lower test scores to unjustly keep and/or place students in special education.[284] Plaintiff also alleges that Robichaux instructed her to "sit in a back room away from the other PA members."[285] Plaintiff alleges that Detillier told her she had to sign IEP's, even if Plaintiff did not agree with them, but that Detillier told Plaintiff's white colleagues that they did not have to sign IEP's that they did not agree with.[286] Plaintiff asserts that Detillier told her to bend the law, and that Robichaux, Detillier and Folse instructed her to engage in unlawful activity.[287] Plaintiff alleges that after the August 20, 2019 meeting, Folse

---

[282] R. Doc. 104 at p. 3, ¶¶ 2 & 6 & p. 5, ¶¶ 8-9.
[283] *Id*. at p. 7, ¶ 19.
[284] *Id*. at p. 6, ¶ 14.
[285] *Id*. at p. 7, ¶ 20.
[286] *Id*. at p. 7, ¶ 21.
[287] *Id*. at p. 8, ¶ 27.

began to make false accusations about Plaintiff's job performance, questioning Plaintiff's work, spreading lies and rumors about Plaintiff, and made Plaintiff's job more difficult by adding unnecessary talks to her job responsibilities.[288]

Plaintiff further alleges that during an October 15, 2019 meeting, she told Steib, Detillier, and Folse that she would not change special education evaluations and would not break the law, and that she "was told by her supervisors to just bend the law and to water herself down."[289]  Plaintiff alleges that during the October 15, 2019 meeting, Steib indicated that other members of the Pupil Appraisal team were willing to sign off on evaluations and "give the principals what they wanted," but that Plaintiff was refusing to do so.[290]  Plaintiff also contends that Detillier instructed her to make up data for evaluations during the October 15, 2019 meeting.[291]  Plaintiff asserts that when she turned in her resignation on December 20, 2019, Detillier told her that "things would not change."[292]

The Court finds that most of these allegations do not amount to "extreme and outrageous conduct" and appear to be "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[293]  To the extent Plaintiff alleges that Detillier and Robichaux asked her to engage in illegal activity, Plaintiff has made no showing that Detillier or Robichaux intended to inflict severe emotional distress, or that they could have foreseen that such distress would result.  Thus, Plaintiff has

---

[288] *Id*. at p. 10, ¶ 40.
[289] *Id*. at p. 10, ¶ 43.
[290] *Id*. at ¶ 44.
[291] *Id*. at p. 11, ¶ 45.
[292] *Id*. at pp. 12-13 at ¶ 60.
[293] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

failed to show a genuine issue of material fact with respect to this element of her intentional infliction of emotional distress claim. Defendants are, therefore, entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress asserted against Detillier, Robichaux, Steib, and Folse in their official and individual capacities.

iv. <u>Louque</u>

Plaintiff alleges that Louque is one of her direct supervisors, that she continuously reported illegal activity in the special education department to her supervisors between 2015 and 2019, including Louque, and that Louque instructed her to engage "in activity that would have been a violation of a student's rights and the Plaintiff refused."[294] Plaintiff alleges that Louque "demeaned and belittled the Plaintiff in front of the student's parents," that Louque approached Plaintiff, "got in front of her face, and prevented her from leaving while she yelled at and verbally attacked the Plaintiff."[295]

The Court finds that these allegations, centering around one dispute with Louque, fail to show that the conduct alleged was sufficiently extreme or outrageous to create a genuine issue of material fact as to this element. Plaintiff has also failed to proffer any evidence that Louque intended to inflict severe emotional distress upon her, or that Louque could have foreseen that such distress would result from the foregoing conduct. As such, Defendants are entitled to summary judgment as to

---

[294] R. Doc. 104 at p. 3, ¶¶ 2 & 6; p. 7, ¶ 26.
[295] *Id*. at pp. 7-8, ¶ 26.

Plaintiff's intentional infliction of emotional distress claim asserted against Louque in her individual and official capacities.

               v.       <u>St. James Parish School Board</u>

    As Defendants point out, Plaintiff has not alleged any specific remarks that should be attributed to St. James Parish School Board.  To the extent Plaintiff vaguely asserts, in her Opposition brief, that St. James Parish School Board should be held vicariously liable for the remarks of the individual defendants, the Court has determined that Plaintiff has failed to show that those remarks were sufficiently extreme or outrageous, or that the individual defendants intended to inflict severe emotional distress or knew that severe emotional distress was substantially certain to result from the conduct, to create a genuine issue of material fact.  As such, St. James Parish School Board cannot be held vicariously liable for those remarks on a claim for intentional infliction of emotional distress.  St. James Parish School Board is, therefore, entitled to summary judgment on this claim.

    **I.**   **<u>Count 7: Plaintiff's Claim Under Louisiana's Whistleblower Statute, La. R.S. 23:967, Against St. James Parish School Board.</u>**

In Count 7 of the Second Amended Complaint, Plaintiff alleges that Cancienne, Detillier, Folse, Robichaux, and Louque asked her to "break, bend or twist the law including but not limited to Louisiana Bulletin 1508 special education policies and procedures and IDEA from 2015 to December 19, 2019 on almost a daily basis."[296] Plaintiff asserts that she advised "the Defendant" of the violations continuously, "but

---

[296] R. Doc. 104 at p. 22.

the last two times was [sic] on August 20, 2019 and October 15, 2019."[297]  Plaintiff alleges that she refused to participate in the prohibited practice, that "the Defendant's" tried to force her to do so, and that "Defendants" constructively discharged her after she refused to participate in the unlawful practice.[298]

Elsewhere in the Second Amended Complaint, Plaintiff alleges that she "complained and reported illegal activities and violations of the law taking place within the school system" on 29 specific dates and in 9 particular months between September 2015 and December 2019.[299]  Plaintiff does not assert who she made these complaints or reports to.  Plaintiff also alleges that during her employment with the St. James Parish School Board, she reported violations of various federal and state laws by St. James Parish School Board employees, including violations of Louisiana Bulletin 1530, Louisiana Bulletin 1706, and Louisiana Bulletin 1508.[300]  Plaintiff further asserts that during the August 20, 2019 work meeting, she asked Cancienne what would happen if a principal made a placement decision, but the evaluation indicated that the student did not qualify for special education according to Louisiana Bulletin 1508, and that Cancienne told Plaintiff to make an evaluation fit the determination made by the principal.[301]  Plaintiff alleges that between September 2015 and her resignation in December 2019, she refused to comply with the illegal

---

[297] *Id.*

[298] *Id.*

[299] *Id.* at p. 5, ¶ 11.

[300] *Id.* at pp. 5-6, ¶ 12.  The Court notes that Plaintiff fails to identify the Louisiana Bulletins cited in her Second Amended Complaint, and merely cites 10 provisions of Title 28 of the Louisiana Administrative Code and La. R.S. 17:1941.  *Id.*  A review of Exhibit B to Exhibit 7 to Plaintiff's Opposition brief (R. Doc. 126-6) shows that the provisions cited are included in Louisiana Bulletins 1530, 1706, and 1508.

[301] R. Doc. 104 at p. 9, ¶ 33.

activity and reported and informed her supervisors, coworkers, and other employees within the St. James Parish School District that what was being done was illegal.[302]

Defendants seek summary judgment on Plaintiff's Louisiana Whistleblower claim on the basis that Plaintiff cannot establish an actual violation of state law by her employer, St. James Parish School Board, nor can she establish any reprisal by St. James Parish School Board or a causal link between the two.[303]  Plaintiff asserts that her Louisiana Whistleblower claim "is solid" based upon her deposition testimony and "over 5 or 6 recordings" in which Plaintiff advised Defendants what portion of Louisiana Bulletin 1508 they were violating.[304]  Plaintiff asserts that she advised Defendants of "things she reasonably believed to violate the law" and she testified extensively regarding same.[305]  Plaintiff contends that Defendants had an obligation to investigate her concerns and that "her whistleblower case is solid" because Defendants failed to investigate them and retaliated against her.[306]

Louisiana's Whistleblower statute, La. R.S. 23:967, provides, in pertinent part, that:

> A. An *employer* shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of the law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing or inquiry into any violation of law.

---

[302] *Id*. at p. 6, ¶ 13.
[303] R. Doc. 112-3 at pp. 30-37
[304] R. Doc. 126 at p. 22 (*citing* R. Doc. 126-6).
[305] R. Doc. 126 at pp. 22-23 (*citing* R. Doc. 126-6).
[306] R. Doc. 126 at p. 23 (*citing* R. Doc. 126-6; *Puig v. Greater New Orleans Expressway Commission*, 00-924 (La. App. 5 Cir. 10/31/00), 772 So.2d 842).

> (3) Objects to or refuses to participate in an employment act or
> practice that is in violation of the law.[307]

The Louisiana Whistleblower statute targets serious employer conduct that violates the law.[308]  "To prevail under the statute, the plaintiff must establish an actual violation of state law; a good faith belief that a violation occurred is insufficient."[309] Additionally, to recover under the statute, the plaintiff must first advise his employer of the violation of law before disclosing the illegal conduct or refusing to participate in the illegal conduct.[310]

The Court first determines whether there is sufficient evidence to show that Plaintiff advised her employer of an actual violation of law.  A review of the record reveals that Plaintiff has failed to proffer any evidence showing that she advised St. James Parish School Board, either directly or through one of her supervisors, of an actual violation of Louisiana law, namely Louisiana Bulletin 1508.  While the Second Amended Complaint contains a laundry list of 19 alleged acts of "illegal activity . . . going on in the Special Education Department," Plaintiff provides no information regarding when these acts occurred or by whom.[311]  Plaintiff merely asserts that she "reported this activity to her supervisors" continuously from 2015 until her

---

[307] La. R.S. 23:967(A) (emphasis added).

[308] *Causey v. Winn-Dixie Logistics, Inc.*, 2015-0813, p.4 (La. App. 1 Cir. 12/23/15), 186 So.3d 185, 187 (citing *Fondren v. Greater New Orleans Exp. Comm'n*, 03-1383 (La. App. 5 Cir. 4/27/04), 871 So.2d 688, 691)).

[309] *Causey*, 2015-0813 at p.4, 186 So.3d at 187 (citing *Accardo v. Louisiana Health Services & Indem. Co.*, 05-2377 (La. App. 1 Cir. 6/21/06), 943 So.2d 381, 386).

[310] *See, Patterson v. Greenbrier Hospital, LLC*, Civ. A. No. 19-9234, 2020 WL 2037194, at *2 (E.D. La. Apr. 28, 2020) (citing *Mabry v. Andrus*, 45,135 (La. App. 2 Cir. 4/14/10), 34 So.3d 1075, 1081); *Williams v. Hospital Service District of West Feliciana Parish, Louisiana*, 250 F. Supp. 3d 90, 97 (M.D. La. 2017) (citing *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04), 886 So.2d 1210, 1215).

[311] R. Doc. 104 at pp. 3-4, ¶ 6.

resignation in December 2019.³¹² These conclusory allegations and unsubstantiated assertions are insufficient to support her Louisiana Whistleblower claim or to defeat summary judgment.

Although Plaintiff claims in her Opposition brief that there are "over 5 or 6 recordings in which the Plaintiff is quoting or reading straight from Bulletin 1508,"³¹³ Plaintiff does not argue that the recordings show that she advised her employer, through her supervisors, of an actual violation of Louisiana law, a requirement pursuant to La. R.S. 23:967. Further, Plaintiff cites to "all" 26 recordings contained in Exhibit 6 to her Opposition brief, which contain over 29 hours of recorded conversations. Thus, Plaintiff has asked the Court to wade through hours of recorded conversations without directing the Court to the relevant portions of those recordings that support her Louisiana Whistleblower claim.³¹⁴ As one Section of this Court has explained, "The district court has no duty to survey the entire record in search of evidence to support a non-movant's position."³¹⁵ This Court makes this point even stronger, though admittedly less eloquently, by referencing the oft-quoted, "Judges are not like pigs, hunting for truffles buried in briefs."³¹⁶ The Court declines to search for evidence in a voluminous record, containing hundreds of pages of exhibits and

---

³¹² *Id*. at pp. 4-5, ¶¶ 7, 10.

³¹³ R. Doc. 126 at p. 22.

³¹⁴ The Court notes that Plaintiff submitted a document titled "St. James Recording Notes," which provides the date of each recording and who was present. *See*, Exhibit D to Exhibit 7, R. Doc. 126-6. Plaintiff also submitted a document titled, "Latasha Cubas St. James Recording Notes for Anundra," which includes summaries and commentary from Plaintiff regarding the contents of each recording. *Id*.

³¹⁵ *Patterson v. Greenbrier Hospital, LLC*, Civ. A. No. 19-9234, 2020 WL 2037194, at *2 (E.D. La. Apr. 28, 2020) (citing *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996)).

³¹⁶ *de la O v. Hous. Auth. of City of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

almost thirty hours of recordings, that the Plaintiff is responsible for presenting.  The only other evidence relied upon by Plaintiff is her Affidavit, which is nearly identical to the allegations in the Second Amended Complaint.[317]

To the extent Plaintiff claims she reported an actual violation of Louisiana Bulletin 1508 to her supervisors, the deposition testimony before the Court does not support that assertion.  Cook testified in her deposition that although Plaintiff told her "there were illegal things taking place in the special education program," Cook investigated her allegations and did not substantiate any of Plaintiff's claims.[318] Cook testified that she investigated these issues and for one student, she was able to "partially substantiate" Plaintiff's allegation that "some things were changed and the child was able to graduate."[319]  Steib testified that Plaintiff voiced "concerns" about students not receiving services that they should be receiving, sometimes over-identification or under-identification of students, illegal activity among the pupil appraisal staff, students being placed in self-contained settings without the benefit of proper evaluations, and concerns that IEP's were not being followed.[320]  Detillier similarly testified that Plaintiff voiced "concerns" regarding what Plaintiff believed to be illegal activity in the special education department, but Detillier did not think

---

[317] *See*, Exhibit 7, R. Doc. 126-6.

[318] R. Doc. 126-2 at p. 11.  The Court notes that Cook also testified that Plaintiff told her that "some evaluations weren't being done correctly and that students weren't being assigned correctly . . . and that children were being placed incorrectly.  *Id*. at pp. 9-10.  Cook testified that she investigated these issues and for one student, she was able to "partially substantiate" Plaintiff's allegation that "some things were changed and the child was able to graduate."  *Id*. at pp. 10-11.  It is unclear from this testimony, however, who made those changes or whether such conduct violated Louisiana Bulletin 1508.  Plaintiff has not alleged such a violation.

[319] *Id*. at pp. 10-11.

[320] R. Doc. 126-3 at pp. 33 & 58.

that it was illegal.[321]  Plaintiff has failed to direct the Court to testimony from Cook or Steib indicating that Plaintiff reported an actual violation of Louisiana law.

To the extent Plaintiff claims that she reported an actual violation of Louisiana law by reporting that she was instructed by her supervisors to violate Louisiana law, Plaintiff has clearly alleged that she "refused to comply with illegal activity taking place within the St. James Parish School Board."[322]  Thus, any such directives from her supervisors did not constitute an *actual* violation of Louisiana law.  The Court notes that Plaintiff alleges that she asked Cancienne during the August 20, 2019 meeting what would happen if a principal's placement decision did not align with the qualifications for special education according to Louisiana Bulletin 1508, and Cancienne advised her to "make an evaluation fit the determination of special education made by the principal."[323]  Plaintiff does not allege that she advised Cancienne of an actual violation of Louisiana Bulletin 1508 during that meeting, nor has she proffered any evidence suggesting that she did.  In her Affidavit, submitted in support of the Opposition brief, Plaintiff contradicts the allegations in the Second Amended Complaint by asserting that she told Cancienne during that meeting that, "what he was instructing us to do was illegal and would bring up all kinds of red flags to the State Department of Education."[324]  Again, to the extent Plaintiff claims that Cancienne instructed her to take certain actions in the future, those potential future

---

[321] R. Doc. 126-5 at pp. 34-39.
[322] R. Doc. 104 at p. 6, ¶ 13; p. 7, ¶ 26; p. 8, ¶¶ 27, 29; p. 10, ¶ 44.
[323] *Id*. at p. 9, ¶ 33.
[324] R. Doc. 126-6, Exhibit 7, Plaintiff's Affidavit, ¶ 120.

violations do not satisfy the requirement of an actual violation of law, as required by the Louisiana Whistleblower statute.

Based on the foregoing, the Court finds that Defendants are entitled to summary judgment on Plaintiff's Louisiana Whistleblower claim asserted against St. James Parish School Board.  Plaintiff has failed to proffer evidence showing that she advised her employer, St. James Parish School Board, of an *actual violation* of state law prior to her refusal to participate in an illegal employment act or practice.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Judgment on the Pleadings and/or Motion for Summary Judgment of St. James Parish School Board and its Individual Defendants on All Claims[325] is **GRANTED.**  All of Plaintiff's claims asserted against the remaining defendants, set forth in Counts 1, 2, 3, 4, 5, 6, and 7 of the Second Amended Complaint, are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, December 30, 2021.

**WENDY B. VITTER**
**United States District Judge**

---

[325] R. Doc. 112.